James H. Boomee, J.
Bach ¡of the- three petitioners applied to the Monroe County Department of Social Services for medical assistance, commonly called “ medicaid ”. The applications of petitioners Schlemowitz and Saarts were denied based upon a finding that their incomes were in excess of the standard for eligibility. Petitioner Boula was Sound eligible for cost sharing medicaid, but ineligible, because of his income, for full coverage. The petitioners requested fair hearings before the State Commissioner of Social Services and upon those hearings the determinations of the local agency were upheld.
No question of fact arises concerning the incomes of the petir tioners. Counsel for petitioners raises only a question of law claiming that the" respondents used an improper standard for determining eligibility of the petitioners and that if a proper .standard had been used all three petitioners would qualify for non-cost-sharing medicaid.
Medicaid is medical assistance provided by a State, with financia] participation by the Federal Government. The Federal statute (U. S. Code, tit. 42, § 1396.a) requires that States participating in medicaid adopt a plan meeting certain requirements. The State plan must make medical assistance available to all persons who are receiving public assistance under any of the Federally assisted State plans known as OAA (old age assistance), AFDC (aid to families with dependent children), AB (aid to the blind), AD (aid to the disabled), or AABD (aid to the aged, blind and disabled) (U. S. Code, tit. 42, § 1396a, subd. [a], par. [10]). Persons who are receiving public assistance under those plans or who qualify for such assistance are referred to as the “categorical needy”. (Code of Fed. Reg., tit. 45, § 248.10, subd. [a], par. [1].)
A State may, but need not, include within the program other persons referred to as the “ medically needy ” (U. S. Code, tit. 42, § 1396a, subd. [a], par. [10], cl. [B]). The “medically needy” are those whose incomes are too high to qualify for public assistance under the categorical programs, but are insufficient to meet their costs for medical care. (Code of Fed. Reg., tit. 45, 248.10, subd. [a], par. [2].)
Petitioner Schlemowitz is “categorically needy”. Had she applied for AFDC (aid to families with dependent children) *531 she would have received public assistance under that program. She has a 15-year-old daughter and she earns $272 per month. Under the AFDC program she would qualify for a $5 per month cash allowance. Respondents do not dispute this, but state that she cannot receive medicaid as a “ categorically needy” person unless she applies for AFDC. I disagree. “ Categorically needy” persons who are not receiving categorical Ad may be included in a State program (Code of. Fed. Reg., tit. 45, § 248.10, subd. [b], par. [2], cl. [i]). And New York State has included these persons in its plan, (Social Services Law, § 366, subd. 1, par. [a]; 18 NYCRR 360.3 [a].) Since petitioner Schlemowitz is eligible for (although not receiving) AFDC, she is eligible for medicaid. The determination of the Commissioner in the case of petitioner Schlemowitz is annulled and the respondents are directed to provide her non-cost-sharing assistance.
Petitioners Boula and Saarts are not “ categorically needy ” persons and can. qualify for medicaid only if they are ‘ ‘ medically needy”. Medicaid may be provided for “medically needy ’’persons under a State plan; but if they are included, the plan must: “ Provide levels of income and resources for maintenance, in total dollar amounts, as a basis for establishing financial eligibility for medical assistance”. (Code of Fed. Reg., tit. 45, § 248.21, subd. [a], par. [3], cl. [i].)
“ The income levels for maintenance must be, as a minimum, at the levels of the most liberal money payment standard used by the State, at any time on or after January 1,1966, as a measure of financial eligibility in any categorical money payment program in the State ' * * *. Where a State imposes any deduction, cost sharing, enrollment fee, premium, or similar charge under the plan with respect to any medical assistance furnished to an individual thereunder, such charge may not be imposed to the extent that it would reduce the individual’s income below the most liberal money payment standard referred to in the preceding sentence.” (Code of Fed. Reg., tit. 45, § 248.21, subd. [a], par. [3], cl. [i], subcl. [b].)
It is petitioners’ contention that the respondents, in considering the eligibility of petitioners for medicaid, have used a standard below the: levels of the standard used in the “ most liberal ” categorical money aid program in the State. Section 366 of the Social Services Law sets forth the State standards of eligibility for medicaid. Subdivision 2 (par. [a]) of that section provides that, “ The following income and resources shall be exempt and shall neither be taken into consideration *532 nor required to be applied toward the payment or part payment of the cost of medical care or services available under this title And clause (8) fixed the exempt annual income of one person at $2,200 ($183 per month) and of a family of two at $3,100 ($258 per month). There is no reference in section 366 to ‘ ‘ the most liberal money payment standard ’ Subdivision 4 of section 367-a, however, states that “ A social services district shall pay only eighty per cent of the cost of medical care ” for any “ medically needy ”, as opposed to “ categorically needy ” person, except that the 80% limitation shall not apply to such person ‘ ‘ whose expenditures and obligations for medical care and services have reduced such person’s income and resources to an amount equal to the most liberal money payment standard used by this state, at any time on or after January first, nineteen hundred sixty-six, as a measure of financial eligibility in any categorical money payment program.”
Nowhere in the medical assistance sections of the Social Services Law is this “ most liberal ” money payment standard set forth in dollars and cents, unless we construe the table in subdivision 2 (par. [a], cl [8]) of section 366 (referred to above) as setting forth that standard. But the respondents contend that section 366 does not set forth the “ most liberal ” money payment standard, but that such standard has been set forth by the Commissioner of Social Services in section 360.3 of the-Rules of the Department of Social Services (18 NYCRR 360.3). This rule contains a table entitled “ Minimum Reserve for Maintaining Family Household ’ ’ and the income levels in the table are lower than those used in section 366 of the Social Services Law. It is apparent, however, that"thrs"table has no application to the petitioners, for it specifically refers to those who are not eligible under the Federally aided program, but are eligible only “ on the basis of eligibility for home relief ”. Home relief is not one of the Federally funded categorical aid programs, and no Federal funds are available for medical assistance provided to persons who are determined to be eligible for medical assistance only because of eligibility for home relief. Federal funds are provided only for those eligible to receive aid under categorical aid programs, or who would be eligible to receive such aid except that their incomes exceed the amount required to qualify (U. S. Code, tit. 18, §§ 1396, 1396a, subd. [a], par. [10], cls. [A], [B]; Code of Fed. Reg., tit. 45, § 248.10, subd. [b], pars. [3], [5]).
There is, to say the least, great difficulty in establishing “ in total dollar amounts ” (Code of Fed. Reg., tit. 45, § 248.21, subd. *533 [a], par. [3], cl. [i]), “ the most liberal money payment standard used by the State ” in any of its categorical aid programs (Code of Fed. Reg., tit. 45, § 248.21, subd. [a], par. [3], cl. [i], subcl. [b]). New York State, in its categorical aid programs, does not provide a total dollar amount of aid. It provides: (a) fixed dollar amount for regular recurring monthly needs exclusive of shelter and fuel for heating (which for one person is $84 and for two persons in a family is $134) plus (b) an allowance for shelter and heat (Social Services Law, § 131-a, subds. 2, 3; 18 NYCRR 352.1). The shelter allowance is not fixed, but corresponds to the actual amount incurred not to exceed maximum scheduled amounts which are different for different areas of the State (18 NYCRR 352.3, 352.4).
Even though the table in rule 360.3 does not in terms apply to eligibility for medical assistance under the Federally funded program, respondents contend that the figures in that table do correspond to the “ most liberal money payment standard ” used as a measure of financial eligibility in any categorical money payment program. Respondents assert that the schedule is based upon the fixed dollar allowance, used in categorical aid programs, exclusive of shelter, plus an additional amount for heat and shelter equal to the average rent cost (including heat) for public assistance recipients throughout New York State. But what is “ average ” cannot be the “ most liberal ”. Use of the average rental cost does injustice to those who must pay rentals higher than the average and favors those whose rental costs are less than average.
Petitioners contend that the ‘ ‘ most liberal money payment standard ’ ’ must be based upon the fixed dollar allowance, exclusive of heat and shelter, plus an additional amount, equal to the maximum allowable rent allowance used anywhere in the State, or at least equal to the maximum allowable rent allowance used in Monroe County. It seems to me, however, that the respondents need not go that far to comply with the “ most liberal ” standard. Since medicaid is based upon need, the standard to be applied to each applicant need only include the basic fixed dollar allowance under the most liberal categorical aid program plus the actual rental cost incurred by the applicant not to exceed the scheduled maximum rental allowance (plus the scheduled heat allowance, if not included in the rent paid).
However, this “most liberal money payment standard” is the minimum the State may establish. The table in section 366 of the Social Services Law sets a standard of income which “ shall be exempt and shall neither be taken into consideration *534 nor required to be applied toward the payment or part payment of the cost of medical care and services available under this title ”. (Social Services Law, § 366, subd. 2, par. [a].) Insofar as the income figures in section 366 exceed the “ most liberal ” standard outlined above, the table in section 366 should be used to determine whether an applicant is to receive non-cost-sharing medicaid. Where the ‘ ‘ most liberal ’ ’ standard exceeds the figures in section 366, the “ most liberal ” standard should be used.
Boula and his wife have a net monthly income (after disregarding the $15 disability exemption) of $243. Since this is less than the $258 monthly income figure in section 366, Boula is eligible for medicaid and none of his income should ‘1 be applied toward the payment or part payment of the cost of medical care and services ”. (Social Services Law, § 366, subd. 2, par. [a], cl. [8].) The determination of the respondents as to Boula is annulled and the respondents are ordered to provide Boula and his wife with non-cost-sharing medical assistance.
The petitioner Saarts has a monthly income from Social Security, and a pension, totalling $202.78. He owns his own home which- is fully paid for. In determining the *1 most liberal ” standard to be applied to him, his shelter costs should be based upon his carrying charges including taxes, water rates and fire insurance (18 NYCRR 352.4). It may well be that the u most liberal ” standard, as applied in his case, will not exceed the standard set forth in section 366. If that is so, the determination of respondents is correct. Nevertheless, the case of petitioner Saarts is sent back to the Commissioner to ascertain the actual shelter expenses and for a new determination in accordance with this memorandum.
Respondents have interpreted section 366 as setting forth income levels for determining eligibility for cost sharing medicaid and have used lower income levels for determining eligibility for non-cost-sharing medicaid. But this interpretation is in direct conflict with the mandate of subdivision 2 (par. [a]) of section 366, which states that the income levels there set forth shall not be “ applied toward the payment or part payment of medical care ”. I realize my decision leaves undecided the question as to the standard to be applied in determining eligibility for cost sharing medicaid. I understand, however, due to recent amendments in the Social Security Law, new Federal medicaid regulations are being prepared and the Commissioner will issue new State regulations substantially altering the present plan. I have not attempted, therefore, to go beyond the issues presented in the three cases before me.
*535 Respondents have argued that even if the State plan violates the Federal regulations, the court cannot interfere; that only the Federal administrative authorities can provide the remedy by' withholding Federal funds. But the Courts have held otherwise (Rosado v. Wyman, 397 U. S. 397; Almenares v. Wyman, 334 F. Supp. 512, 517-518).