WALTER DROGOLEWICZ, Plaintiff-Appellant, *v.* ARTHUR QUERN, Director of The Department of Public Aid, Defendant-Appellee.

First District (4th Division)    No. 78-1247

Opinion filed August 9, 1979.

Gregory McHugh and Thomas Grippando, of Cook County Legal Assistance Foundation, Inc., of Chicago, for appellant.

William J. Scott, Attorney General, of Chicago (Imelda R. Terrazino, Assistant Attorney General, of counsel), for appellee.

Mr. PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff, Walter Drogolewicz, appeals the circuit court of Cook County order, made under the Administrative Review Act (Ill. Rev. Stat. 1977, ch. 110, par. 264 *et seq.*), upholding the decision of the Illinois Department of Public Aid (the Department) which denied him Medical Assistance (Medicaid). Drogolewicz does not challenge the Department's evidentiary findings, but rather argues that the law and regulation upon which the Department relied in denying him Medicaid contravene the due process, equal protection and supremacy clauses of the Federal Constitution. Drogolewicz died during the pendency of this action. For purposes of clarity, in this opinion we will refer to him as if he were the appellant, even though his wife, as his personal representative, was substituted for him as a party.

A stroke severely disabled Drogolewicz in 1976 and he was hospitalized. While in the hospital, on February 10, 1977, upon being told death was near, he gave $6000 to his children. Drogolewicz's hospital bill was over $27,000. His private medical insurance paid $12,000 of the total; he paid another $5000; but, he claimed, he could not pay the remaining $9500 of the bill. On February 18, 1977, he applied to the Department for assistance in paying this bill under the Medicaid program in Illinois. The Department denied his application, ruling that when he gave $6000 to his children he transferred property for inadequate consideration in order to obtain aid, violating a Department rule (see Aged, Blind and Disabled (AABD) Manual ch. 500, Topic 505.6; see also Illinois Department of Public Aid Rule 3.40, effective March 19, 1979); neither party indicates any substantive changes in the Department rules since this case began; therefore, for convenience, we will cite to the current, newly published Department rules.

The Department rule used to deny Drogolewicz Medicaid was promulgated under the authority of section 3—1.3 of the Illinois Public Aid Code. (Ill. Rev. Stat. 1977, ch. 23, art. III, par. 3—1.3.) That section disqualifies any person who has transferred a property interest to obtain or increase his need for aid from receiving aid under article III for five years from the date of the transfer or until its value is reacquired. (Ill. Rev. Stat. 1977, ch. 23, art. III, par. 3—1.3.) Further, it presumes that the transferor of property, for less than cash market value within five years of his application for aid, acted to qualify or increase need for aid, unless he demonstrates "evidence sufficient to prove the contrary." Ill. Rev. Stat. 1977, ch. 23, art. III, par. 3—1.3.

Illinois and the Federal government jointly fund the Illinois Medicaid program established under title XIX of the Federal Social Security Act (SSA). (42 U.S.C.§1396a *et seq.* (1976); see also Ill. Rev. Stat. 1977, ch. 23, art. V, par. 5—1 *et seq.*) The Federal Government conditions its funding on a State's compliance with the SSA. (42 U.S.C. §1396a (1976); see *Application of Schlemowitz* (1973), 75 Misc. 2d 529, 347 N.Y.S.2d 133.) Illinois, under article V of its Public Aid Code, provides Medicaid to persons who are either "categorically" or "medically" needy. (Ill. Rev. Stat. 1977, ch. 23, art. V, par. 5—2.) The "categorically" needy are those aged, blind or disabled or dependent children whose incomes and resources are so low that they need basic financial maintenance aid under articles III (basic financial maintenance aid to blind, aged, or disabled persons, Ill. Rev. Stat. 1977, ch. 23, art. III, par. 3—1 *et seq.*) and IV of the Code (basic financial maintenance aid to families with dependent children, Ill. Rev. Stat. 1977, ch. 23, art. IV, par. 4—1 *et seq.*). (Ill. Rev. Stat. 1977, ch. 23, art. V, par. 5—2(1).) The "medically" needy are those aged, blind, or disabled persons or dependent children whose financial circumstances are such that they do not qualify for basic financial maintenance aid under articles III and IV but, who still require aid to pay for needed medical care. Ill. Rev. Stat. 1977, ch. 23, art. V, par. 5—2(2).

Drogolewicz asserts that section 3—1.3 and the Department regulation promulgated under it are unsound measured against the constitution and the SSA. He contends that they are inapplicable to Medicaid recipients and contravene his due process rights by their unreasonable and unfair presumption of fraud, deny him equal protection by prohibiting aid to a classification of medically indigent persons and conflict with the SSA by adding an eligibility requirement in violation of 42 U.S.C., sections 1396a(a)(10)(c)(i) and 1396a(a)(17), and thus also violate the supremacy clause of the Federal Constitution.

We reject Drogolewicz's claim that section 3—1.3 and the regulation are inapplicable to him. Violation of section 3—1.3 makes a person ineligible for "aid under this Article." (Ill. Rev. Stat. 1977, ch. 23, art. III, par. 3—1.3.) Drogolewicz points out that article V of the Code governs the disbursement of Medicaid and article III governs eligibility for basic financial assistance under the state AABD program. Since he does not seek aid under article III, section 3—1.3 of the Code, he states, cannot apply to him.

The Department's appeal brief can be read to suggest that Drogolewicz sought aid under article V, section 5—2(4) of the Illinois Public Aid Code, which provides medical assistance to those who, although not eligible for aid under other programs, do not have financial resources to pay necessary medical bills. Section 5—2(4) contains no language which would link it to article III. Application of section 3—1.3 in

article III to a Medical Assistance recipient under section 5—2(4), then, would create a notification problem which might be constitutionally improper.

The trial record, however, shows that Drogolewicz sought assistance under the "MANG-D" program. Present Department regulations translate the acronym "MANG-D" to *Medical Assistance* (Medicaid) for those who would qualify under categorical assistance programs (AABD under article III or dependent children under article IV) but who receive "*No Grant*" of financial assistance under them. The "D" would indicate disability. (See Department of Public Aid Rule 2.01 effective 3—1—79; see also Rule 3.01, effective 3—1—79.) The MANG-D program, it would seem, derives not from section 5—2(4) but from section 5—2(2) of article V which provides Medicaid to those who although "eligible for basic [financial] maintenance assistance under articles III and IV" fail "to qualify" for such assistance "on the basis of need." Ill. Rev. Stat. 1977, ch. 23, art. V, par. 5—2(2).

■■ Drogolewicz's eligibility for Medicaid under article V, section 5—2(2), thus depended upon his ability to qualify under the appropriate categorical assistance program under article III. Violation of section 3—1.3 would disqualify a person for basic assistance under article III and therefore disqualify a person for Medicaid under article V, section 5—2(2). While this may not be as apparent as it should be from the face of the law, such a reading is not so obscure as to deny notice to an applicant for Medicaid or to conflict with the intent of Congress to avoid "unduly complicated methods of determining eligibility." S. Rep. No. 404, 89th Cong., 1st Sess., *reprinted in* U.S. Code Cong. & Ad. News 1943, 2017 (1965).

Neither do we find the eligibility requirement in section 3—1.3 and the regulation unreasonably or unfairly presume fraud in violation of the due process clause. The procedure used in section 3—1.3 exists in other contexts, for instance, to protect a creditor's rights to funds transferred in derogation of his priority to them. (See Uniform Fraudulent Conveyance Act §6; Federal Bankruptcy Act, 11 U.S.C.§107(d) (1976); Ill. Rev. Stat. 1977, ch. 59, par. 4.) As in section 3—1.3, under those laws proof of actual intent to defraud is unnecessary. As long as a property transfer is made for little or no value and brings about a false poverty in the transferor, those laws infer that the transferred asset is available to satisfy or pay a portion of a debt. See *Wilkey v. Wax* (1967), 82 Ill. App. 2d 67, 225 N.E.2d 813; *Montgomery Ward & Co. v. Simmons* (1970), 128 Ill. App. 2d 186, 261 N.E.2d 555.

We believe a similar rationale applies here. It is reasonable for the State to require, before it undertakes the disbursal of State monies for personal medical costs, that an applicant prove he has not divested

himself of funds to create an artificial medical need and to infer, in the absence of such proof, the availability of the asset to satisfy or pay a portion of the medical debt.

■■ In *Lavine v. Milne* (1976), 424 U.S. 577, 579, 47 L. Ed. 2d 249, 252, 96 S. Ct. 1010, 1013, the United States Supreme Court upheld a statute which presumed that anyone who voluntarily terminated employment and applied for aid within 75 days of the termination did so to obtain or increase his need for State welfare, "in the absence of evidence to the contrary * * *." The Supreme Court reasoned that the procedural effect of the statute did not produce an irrebuttable presumption, but merely required the applicant, rather than the State, to prove eligibility for welfare. Such a provision is of little consequence, the Supreme Court noted, since welfare is not a fundamental right and an applicant had the burden of proving his initial eligibility. The lack of a benefit-seeking motive in quitting work was considered a permissible and reasonable eligibility requirement since it counteracted "the risk that the availability of welfare benefits might undermine the incentive to work." (*Lavine*, 424 U.S. 577, 584-85 n.9, 47 L. Ed. 2d 249, 256 n.9, 96 S. Ct. 1010, 1015 n.9.) Based on *Lavine* we cannot say that unconstitutional unfairness results from the similar requirement in section 3—1.3 and the Department rule which place the burden on the Medicaid applicant to demonstrate a lack of benefit-seeking motive in divestments of property for less than fair market value.

We are aware that similar eligibility requirements were stricken as unconstitutional in several States. (See, *e.g., Buckner v. Maher* (D. Conn. 1976), 424 F. Supp. 366; *Owens v. Roberts* (M.D. Fla. 1974), 377 F. Supp. 45; *Udina v. Walsh* (E.D.Mo. 1977), 440 F. Supp. 1151.) However, all the laws so stricken contained varieties of an irrebuttable presumption which foreclosed any avenues of proof under which an applicant might achieve eligibility by showing no benefit-seeking motive in the transfer. In those laws, unlike section 3—1.3, any property transferred, or any property transferred for less than fair consideration, irrefutably disqualified an applicant from aid, regardless of the purpose of the transfer.

Section 3—1.3 takes no such conclusionary stance; like the statute in *Lavine*, its procedural effect neither shifts the burden to a Medicaid applicant to show legitimate unavailability of assets nor eases a State obligation to prove the contrary, but places the burden of proof on the applicant from the outset to demonstrate what resources and income are available for his personal and medical needs. See *Lavine*, 424 U.S. 577, 584-85 n.9, 47 L. Ed. 2d 249, 256 n.9, 96 S. Ct. 1010, 1015 n.9.

Having determined that section 3—1.3 and the Department rule apply to Drogolewicz and that his due process rights were not violated by them, we nevertheless must consider whether section 3—1.3 and the

Department regulation conflict with the Federal Medicaid scheme, violating both the SSA enabling act (42 U.S.C.§1396a (1976)) and the supremacy clause of the constitution.

Drogolewicz contends that section 3—1.3 goes far beyond the permissible limits of Medicaid eligibility requirements as articulated in the SSA in its sections 1396a(a)(10)(C)(i) and 1396a(a)(17). (42 U.S.C. §§1396a(a)(10)(C)(i), 1396a(a)(17) (1976).) The SSA permits some variety of eligibility requirements among State programs and between the State and Federal laws themselves. See 42 C.F.R. §435.1 *et seq.* (1978), a recodification of 42 C.F.R. §448.1 *et seq.* which governs Medicaid eligibility under title XIX of the SSA and 45 C.F.R. §233.10 *et seq.* (1978) which governs financial assistance eligibility for AABD and ADFC under titles I, IV-A, X, XIV and XVI of the SSA.

Section 1396a(a)(10)(C)(i) of the SSA provides that if a State chooses to give Medicaid to the medically needy, it can make it available to all who, except for income and resources, would be eligible for aid under any State plan or all who would be eligible under the Federal Supplementary Security Income (SSI) program. (42 U.S.C. §1396a(a)(C)(10)(i) (1976).) This law is read in the disjunctive, to permit States to extend Medicaid to either all individuals who qualify for SSI or impose, under certain conditions, the eligibility requirements of a State plan which may differ from SSI requirements. (See 42 C.F.R. §435.1, 435.121 (1978).) Those States which automatically provide Medicaid to recipients of SSI must use the SSI eligibility requirements to determine the eligibility of the medically needy, who may not be receiving SSI payments. (See *Fabula v. Buck* (No. 79-1011, 4th Cir., filed May 25, 1979), ___ F.2d ___.) The SSI requirements discount the benefit-seeking motive, as sought to be prevented by laws similar to section 3—1.3, by expressly allowing "an applicant whose assets exceed * * * [SSI] eligibility limitations, to dispose of excess assets to become eligibile." (*Fabula v. Buck*, at ___; 42 U.S.C. §1382(b)(b) (1976).) In *Fabula v. Buck* it was held that no stricter eligibility requirement, which might deny Medicaid to a person who transferred assets "with the intent to become eligible for Medicaid," is permissible. *Fabula v. Buck*, at ___.

Drogolewicz suggests that the reasoning in *Fabula* should apply to invalidate section 3—1.3 because of its conflict with the SSI provision. However, the Drogolewicz reply brief admits that in Illinois Medicaid is not automatically available to "anybody eligible for SSI." This appears to concede that Illinois may use requirements other than SSI requirements to determine eligibility for financial assistance and Medicaid. Under such circumstances, we cannot say that the holding in *Fabula*, invalidating a State regulation similar to section 3—1.3 because of its conflict with the SSI requirements, is applicable in Illinois.

Drogolewicz argues that section 3—1.3 also conflicts with 42 U.S.C. §1396a(a)(17) (1976) which requires the use of reasonable standards for determining Medicaid eligibility "consistent with [Medicaids'] * * * objectives * * * taking into account only such income and resources as are * * * available to the applicant" for his personal and medical needs. (42 U.S.C. §1396a(a)(17) (1976).) He declares that the $6000 he gave his children is not presently available to him for his medical bill and that he cannot reacquire it. Thus, according to Drogolewicz, section 3—1.3 sets up an eligibility requirement specifically contrary to the provisions and purposes of the SSA.

We cannot agree with the entirety of Drogolewicz's argument. While section 3—1.3 does take into account assets which may not be within an applicant's immediate possession, it does not automatically prohibit Medicaid to persons without available income and resources for medical needs. The Wisconsin Supreme Court in *Lerner v. Division of Family Services* (1975), 70 Wis. 2d 670, 679-80, 235 N.W.2d 478, 483, upheld a similar procedure, noting:

> "[The law] merely requires the petitioner to demonstrate that the lack of presently available resources is not the result of a divestment of property for the purpose of qualifying for benefits. Thus, the statutory provision is not in conflict with the federal statute and regulations, but is merely a procedure for determining what assets are, in fact, available to meet present needs or, but for divestment, would have been available. Petitioner is not precluded from making a showing that the specific divestment was not made in contemplation of benefits * * *."

■■ Courts may not void State action under the SSA "[s]o long as the State's actions are not in violation of any specific provision of the Constitution or the [SSA] * * *." (*Jefferson v. Hackney* (1972), 406 U.S. 535, 541, 32 L. Ed. 2d 285, 293, 92 S. Ct. 1724, 1729.) Since neither the SSA nor the constitution explicitly prohibit such a counting method, we find the procedure of section 3—1.3 which assesses resources and income transferred with the intent to qualify for aid as available to pay an applicant's medical debt is valid.

On the other hand, that portion of section 3—1.3 which mandates a five-year ineligibility from Medicaid once a transfer is made does explicitly conflict with section 1396(a)(17) of the SSA. The Congress "designed" that provision "so that the States will not assume the availability of income which may not, in fact, be available or overevaluate income and resources which are available." (S. Rep. No. 404, 89th Cong., 1st Sess., as reprinted in U.S. Code & Ad. News 1943, 2018 (1965).) An unvarying five-year ineligibility formula does just that. (*Cf. Gray Panthers v. Secretary, Department of Health Education and*

*Welfare* (D.D.C. 1978), 461 F. Supp. 319, 323, holding laws which automatically deem a spouse's income available to a Medicaid applicant conflict with section 1396a(a)(17).) By arbitrarily deeming the transferred asset continually available over a five-year period to pay an applicant's medical bill, instead of "applying" it to the medical bill, the asset is "overevaluated." It inflates the value of the asset out of proportion to the applicant's actual income and resources, to the amount of the medical bill.

For example, assuming the Drogolewicz had not given away the $6000, he still might have had insufficient funds to pay for his own needs and pay all of his medical bill. While the $6000 could have been used in computation of eligibility, by denying Drogolewicz Medicaid for five years, the Department exaggerates the value of the asset transferred and literally counts, as income, that part of the medical bill Drogolewicz could not pay, an asset he does not presently have and, in fact, never possessed.

■ We do not hold that a State cannot constitutionally prohibit a benefit-seeking motive in a Medicaid applicant's divestment of property, to preserve welfare monies for those who, if not for the Medicaid program, would be unable to pay necessary medical bills. Nor is a State prevented by the constitution from using a method of eligibility computation which, in pursuing this goal, may be imprecise or overbroad. (See *Weinberger v. Salfi* (1975), 422 U.S. 749, 45 L. Ed. 2d 222, 95 S. Ct. 2457.) But while section 3—1.3 and the regulation may fulfill these goals of Illinois' welfare policy, the SSA expressly forbids the blanket disqualification procedure of section 3—1.3 chosen to achieve them. Nonavailable assets cannot be deemed available, and the availability of specific assets cannot be given a currency beyond their actual value by a failure to apply their worth to the debt in question. Therefore, we find the five-year ineligibility provision of section 3—1.3 and the Department's regulation promulgated under it violative of the SSA and the supremacy clause of the Federal Constitution. Based on this decision, it is not necessary for us to consider Drogolewicz's equal protection claims. *Rosado v. Wyman* (1970), 397 U.S. 397, 25 L. Ed. 2d 442, 90 S. Ct. 1207.

The decision of the circuit court is reversed and this cause is remanded to the Department for a redetermination of Drogolewicz's eligibility for Medicaid which will take into account only the actual value of the asset he transferred and provide assistance for any medical expenses, supplied under the Code, which may still be owing after such a computation.

Reversed and remanded.

JOHNSON and LINN, JJ., concur.