Angeline DOKOS, et al., Plaintiffs,

v.

Jeffrey C. MILLER, et al., Defendants.

No. 78 C 319.

United States District Court,
N. D. Ill., E. D.

June 17, 1981.

Dean Timothy Jost, Legal Services for the Mentally Disabled of Upton, Robert Berger, James D. Weill, Legal Assistance Foundation, Chicago, Ill., for plaintiffs.

Tyrone Fahner, Atty. Gen., Springfield, Ill., Patricia Suberlak, Asst. Atty. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Angeline Dokos ("Dokos") and Katherine Malenk ("Malenk") (collectively "plaintiffs"), acting both for themselves and for a putative class, sue the Illinois Department of Public Aid ("IDPA") and its Director Jeffrey Miller ("Miller")[1] challenging the validity of Ill.Rev.Stat. ch. 23, § 3–1.3 (the "transfer of assets rule" or simply the "rule"). That rule applies to otherwise Medicaid-eligible aged, blind or disabled persons who have, before filing their Medicaid applications, transferred assets for less than fair market value. It presumptively excludes such persons from any Medicaid eligibility for a period of five years, measured from the date of such transfer. Since the decision in *Drogolewicz v. Quern*, 74 Ill.App.3d 862, 30 Ill.Dec. 865, 393 N.E.2d 1212 (1st Dist. 1979), however, defendants have been required to limit, and have limited, the presumed ineligibility in terms of the actual value of the transferred asset rather than for a full five years.

Plaintiffs claim the rule (1) violates their rights under the Fourteenth Amendment and (2) conflicts with federal law in violation of the Supremacy Clause. IDPA and plaintiffs have filed cross-motions for partial summary judgment on the latter issue. Alternatively plaintiffs seek a preliminary injunction enjoining IDPA from enforcing the rule and requiring it to reprocess Medicaid applications of the last five years on which aid has been denied under the rule. Finally plaintiffs have moved for class certification. For the reasons stated in this memorandum opinion and order:

1.  Plaintiffs' motion for summary judgment is granted.

2.  Plaintiffs' motion for class certification is continued pending further submissions, if desired, by the parties.

### Facts

IDPA administers the Medical Assistance ("Medicaid") program under Article V of the Illinois Public Aid Code, Ill.Rev.Stat. ch. 23, §§ 5–1 *et seq.* Medicaid provides medical care for several classes of persons if they are unable to pay for such care themselves: aged, blind and disabled persons and dependent children and their families. Its program is funded jointly by state money and by federal money provided under Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq.* Under 42 U.S.C. § 1396a IDPA is required to administer Medicaid in accordance with federal law.

---

1. This action was originally filed against IDPA and its then Director Arthur Quern. Under Fed.R.Civ.P. ("Rule") 25(d) Miller was automatically substituted for Quern as defendant when he became Director.

Persons are eligible to receive Medicaid if they are either "categorically" or "medically" needy. Those receiving cash welfare payments under Aid to Families with Dependent Children ("AFDC") and Supplemental Security Income ("SSI") are, with a limited exception, "categorically needy"— meaning simply that they automatically qualify for Medicaid. Persons who do not receive cash welfare payments but demonstrate an inability to pay medical bills are deemed "medically needy" and are eligible for Medicaid to the extent such bills exceed their ability to pay.

Illinois' transfer of assets rule applies to all categorically and medically needy Medicaid applicants except for persons whose potential eligibility is as families with dependent children. In order to receive Medicaid:

> The person shall not have made, at any time within 5 years immediately prior to the filing of his application, a voluntary or involuntary assignment or transfer of any legal or equitable interest in real or personal property, whether vested, contingent or inchoate, for the purpose of qualifying for or increasing his need for aid under this Article.

> Any assignment or transfer of property made without consideration, or for a consideration which is not paid, or which does not approximate the fair, cash market value of the property shall, prima facie, be deemed made for the purpose of qualifying for or increasing the need for aid. Unless and until evidence sufficient to prove the contrary is submitted, or the property is reassigned or retransferred to the applicant, or its equivalent value returned, he shall be ineligible for aid under this Article for 5 years following the date of the transfer or assignment.

> If aid has been granted as a result of a failure to disclose any transfer or assignment of property or to report any change in status with respect to property or income, as required by Section 11–18 and 11–19 of Article XI, the aid may at any

time be cancelled or suspended or the amount thereof varied.

In November 1977 Dokos applied for and was denied Medicaid because assets transfers within the previous five years to her daughter-in-law, grandson and a creditor of her deceased son rendered her ineligible under the rule. Malenk applied for and began receiving Medicaid payments in July 1977. Several months later IDPA terminated payments when it discovered she had sold a house in 1975 and allegedly had received inadequate consideration for the sale. Termination of Malenk's benefits was subsequently upheld by an IDPA Board that heard her administrative appeal.[2]

On January 27, 1978 plaintiffs filed this action under 42 U.S.C. § 1983, 28 U.S.C. §§ 2201 and 2202 for declaratory and injunctive relief. Specifically they charge the transfer of assets rule is unlawful because:

1. it violates the Constitution by denying plaintiffs and the putative class members equal protection and due process under the law;

2. it "takes into account" in determining Medicaid eligibility financial resources other than those "currently available" to the applicants in violation of 42 U.S.C. §§ 1396a(a)(10) and (17);

3. it applies a more restrictive eligibility standard to aged, blind or disabled persons than to families with dependent children in violation of 42 U.S.C. §§ 1396a(a)(17) and 42 C.F.R. § 448.-3(c)(1)(iv); and

4. it discriminates against handicapped persons in violation of 29 U.S.C. § 794 and 20 C.F.R. § 84.5(2).

Plaintiffs also sought certification of the class of:

> all aged, blind and disabled persons who have applied, are applying, or will apply for medical assistance pursuant to Ill.Rev. Stat. ch. 23, § 5–1, and have been, are being, or will be denied benefits, or whose benefits have been, are being, or will be

---

2. Malenk claimed she had spent the proceeds from the sale of the house. However the Board ruled that "monies from the sale had not been

... accounted for" and "no evidence had been submitted that appellant received adequate consideration for the sale of the property."

cancelled solely because they have transferred property within the preceding five years for less than adequate consideration.

On February 17 and March 17, 1978, respectively, Judge Bua entered a temporary restraining order and preliminary injunction enjoining IDPA from enforcing the transfer of assets provision against Dokos and Malenk. At the same time he denied class certification as unnecessary, stating that a determination as to the legality of the rule on plaintiffs' individual claims would necessarily "affect" all applicants.

On July 11, 1978 plaintiffs filed their summary judgment motion, limited to the contention that the transfer of assets provision contravenes applicable federal law. At the same time they again moved for class certification. On August 28, 1978 IDPA filed its cross-motion for summary judgment, also limited to the federal statutory issues. During the nearly two-year period thereafter while the case was still assigned to Judge Bua, the parties supplemented their submissions on' the cross-motions to reflect continuing developments in this fluid area of the law. After assignment to this Court the parties updated their submissions but then suggested that a then-pending case in the United States Supreme Court, *Beltran v. Myers*, was likely to provide the definitive answer to the question before this Court.

*Beltran* has now been decided in a way that defeated the parties' expectations in that respect.[3] Thus the cross-motions must be resolved without the Supreme Court's guidance. Two developments since the par-

ties' original submissions are of particular significance in that resolution:

1. In *Drogolowicz v. Quern*, 74 Ill. App.3d 862, 30 Ill.Dec. 865, 393 N.E.2d 1212 (1st Dist. 1979) the Illinois Appellate Court determined that the automatic five-year disqualification feature of the transfer of assets provision violates the mandate of 42 U.S.C. § 1396a(a)(17) that, as the Court put it, states not "assume the availability of income which may not, in fact, be available. . . ." Accordingly the Court held that, consistent with federal law, IDPA may "take into account only the actual value of the asset ... transferred and provide assistance for any medical expenses ... which may still be owing after such a computation." In response to that decision IDPA promulgated a new Rule 3.405:

> Property transfers completed within five years of the date of application for assistance shall be considered in determining eligibility. If a fair market value was not received, the client shall be ineligible for assistance unless he can provide acceptable proof that he did not transfer the property to qualify for or increase his need for public assistance. . . . The period of ineligibility lasts from the initial date [of application] for as long as the asset would meet the clients [sic] needs if it were available, but in no case shall it last longer than 5 years from the date of transfer.

2. On December 28, 1980 President Carter signed into law Amendment No. 1936 to the Pneumococcal Vaccine Act, H.R. 8406 (the "Boren-Long Amendment"), Section 5 of Public Law 96–611. In inimitable Congressional style, despite the title of the Act

---

**3.** *Beltran v. Myers*, —— U.S. ——, ——, 101 S.Ct. 1961, 1963, 68 L.Ed.2d 495 (1981). In *Beltran* the Supreme Court, which had granted certiorari to consider the legality of California's transfer of assets rule, in a per curiam opinion remanded the action to the Court of Appeals for the Ninth Circuit "for reconsideration of its decision in light of the recent statutory change." Apart from its statement referred to in note 4, *Beltran* is unfortunately of little utility here. After reviewing the text of the Boren-Long Amendment (hereafter discussed) the Court did say "it would appear that *in the future* the States will be permitted to impose

transfer of assets restrictions generally similar to that in California" (emphasis added). Plaintiffs might well argue the implication of that statement to be that *pre*-Amendment restrictions were impermissible. That conclusion cannot be sustained given the fact that *Beltran* did not adopt the position urged by four concurring justices: that the action should have been remanded with the express mandate that "California's 'transfer of assets' rule ... [be considered] prohibited by existing federal law." Thus *Beltran* simply sheds no light on the substantive issues raised in this action.

itself the Boren-Long Amendment dealt with Medicaid eligibility:

> Section 1613 of the Social Security Act is amended by adding at the end thereof the following new subsection:

#### DISPOSAL OF RESOURCES FOR LESS THAN FAIR MARKET VALUE

> (c)(1) In determining the resources of an individual (and his eligible spouse, if any) there shall be included (but subject to the exclusions under subsection (a)) any resource (or interest therein) owned by such individual or eligible spouse within the preceding 24 months if such individual or eligible spouse gave away or sold such resource or interest at less than fair market value of such resource or interest for the purpose of establishing eligibility for benefits or assistance under this Act. (2) Any transaction described in paragraph (1) shall be presumed to have been for the purpose of establishing eligibility for benefits or assistance under this Act unless such individual or eligible spouse furnishes convincing evidence to establish that the transaction was exclusively for some other purpose. . . .

> \*　　\*　　\*　　\*　　\*　　\*

> (b) Section 1902 of the Social Security Act is amended by adding at the end thereof the following new subsection: (j)(1) Notwithstanding any other provision of this title, an individual who would otherwise be eligible for medical assistance under the State plan approved under this title may be denied such assistance if such individual would not be eligible for such medical assistance but for the fact that he disposed of resources for less than fair market value. If the State plan provides for the denial of such assistance by reason of such disposal of resources, the State plan shall specify a procedure for implementing such denial which, except as provided in paragraph (2), is not more restrictive than the procedure specified in section 1613(c) of this Act.

> (2) In any case where the uncompensated value of disposed of resources exceeds $12,000, the State plan may provide for a period of ineligibility which exceeds 24 months. If a State plan provides for a period of ineligibility exceeding 24 months, such plan shall provide for the period of ineligibility to bear a reasonable relationship to such uncompensated value.

On July 1, 1981 the Boren-Long Amendment will take effect.[4]

#### Available Income and Resources Under 42 U.S.C. §§ 1396a(a)(10) and (17)

Sections 1396a(a)(10) and (17) impose statutory limitations on the criteria to be employed by states in determining Medicaid eligibility. They require the states to "provide for taking into account only such income and resources as are, as determined in accordance with standards provided by the Secretary, available to the applicant or recipient." 45 C.F.R. § 248.3(b)(1) (1976) sets the standards in response to the statutory mandate:

> [W]ith respect to both the categorically needy and, if they are included in the plan, the medically needy, a State plan must: (1) Provide that only such income and resources as are actually available will be considered and that income and resources will be reasonably evaluated.

Plaintiffs claim the transfer of assets rule contravenes those provisions by "assuming" recipients and applicants have access to resources not "actually available" to them. IDPA does not contest the general applicability of those provisions to the Illinois Medicaid program. Rather it urges the rule is a "fraud prevention statute" having nothing to do with resource availability. Accordingly, IDPA reasons, the available resources requirement simply has no bearing on the validity of the rule.

IDPA's contention that the rule is fraud-oriented (and does not "consider" unavaila-

---

**4.** Although plaintiffs and IDPA had differed on the effective date, *Beltran* resolved that difference by stating (—— U.S. at ——, 101 S.Ct. at 1963) that the Boren-Long Amendment "will take effect on July 1, 1981."

ble assets) is based in large part on three of the rule's characteristics (quoting from IDPA's memorandum) [5]:

1. "This statute looks not to the value of the transferred asset but looks rather to the state of mind of the applicant who has made the transfer.

2. "There is no provision that an applicant would be ineligible for the period of time in which the asset would have been consumed had the property not been transferred [nor] any attempt ... to compute how long the applicant could have lived upon the transferred asset...

3. "The statute provides that an applicant does have the opportunity to show that they [sic] did not transfer their assets to qualify for assistance."

Thus plaintiffs maintain the transfer of assets rule is a "resource counting" rather than a "fraud prevention" provision. IDPA argues the converse. Both parties apparently assume it requires resolution of that dispute to dispose of the issue raised under 42 U.S.C. §§ 1396a(a)(10) and (17) and their implementing regulation.

In the Court's view the parties' dispute, as so framed, poses a false issue. After all, the federal requirement is that in formulat-ing its Medicaid eligibility rules the state may take into account "only such income and resources as are *actually* available" to the applicant or recipient. Whether cast as a "resource" or a "fraud" rule, any state law that considers *non*-available resources is at odds with that mandate.

■ Read literally (and there is no reason to do otherwise), the federal provisions leave no room for recasting as "actually available" any assets that the recipient or applicant has in fact relinquished. Against that benchmark the transfer of assets rule is fatally flawed: A recipient's or applicant's eligibility is critically impacted by the use of assets no longer in his or her possession. Whether that impact results from the state's desire to stem fraud or to "count resources," [6] the rule clearly contravenes the federal law directive that only *actually available* resources be considered for eligibility purposes.

True enough, as so construed the federal law left a significant loophole in the Social Security Act by permitting the type of fraud at which transfer of assets rules are directed. But that initial legislative oversight in a complex statute does not justify a judicial cure. That should be left to Con-

---

5. All of IDPA's arguments were advanced before the Illinois Appellate Court's decision in *Drogolowicz.* Though IDPA claims otherwise, *Drogolowicz* specifically held that the flat five-year ineligibility feature of the rule violated 42 U.S.C. § 1396a(a)(17) by "assum[ing] the availability of income which may not, in fact, be available or overevaluat[ing] income and resources which are available." 74 Ill.App.3d at 868, 30 Ill.Dec. at 870, 393 N.E.2d at 1217. That decision is of course the law in Illinois, as IDPA recognized in promulgating its Rule 3.405. So it is the transfer of assets rule, not in its literal statutory form but rather as judicially "rewritten" by *Drogolowicz* and conforming Rule 3.405, against which IDPA's "fraud" argument must be appraised. That new rule refutes IDPA's first two assertions as quoted in the text of this opinion, while the third is true but irrelevant.

6. Because this decision may of course be appealed it seems appropriate also to express a perspective on the parties' analysis. This Court views the rule, as modified by *Drogolowicz* and the new Illinois regulation, as predominantly resource- rather than fraud-oriented. It measures the duration of Medicaid ineligibility by the time period the transferred asset would have met the applicant's or recipient's medical needs. Without question that concept effectively attributes to an applicant or recipient the possession of assets to which he or she does not have access. Moreover the rule encompasses both voluntary and involuntary transfers (and surely the latter are not indicative of fraud). Finally Medicaid eligibility is restored under the rule if transferred property is "reassigned or retransferred to the applicant, or its equivalent value returned...." That clause strongly suggests that recapturing the resource (the obverse side of resource counting), not punishing the alleged fraud, is the real basis for the rule. Only the fact that the rule affords an ineligible applicant the opportunity to demonstrate that he or she did not transfer assets in order to qualify for assistance possibly suggests that it is a fraud rather than a resource-counting provision. And if the applicant is unsuccessful in so doing for any reason, the result is that assets not "actually available" are "considered" in determining eligibility.

gress—and Congress has in fact responded by enacting the Boren-Long Amendment. As its sponsor Senator Long stated on the Senate floor on behalf of the Amendment[7] (Cong.Rec. S16505, daily ed. Dec. 13, 1980, emphasis added):

> In recent years a number of States have uncovered an abusive practice in which certain individuals transfer substantial assets to their families or to others in order to bring themselves down to the welfare eligibility level which will qualify them for payments under the supplemental security income (SSI) program and for fully paid medical care under the medicaid program. *Unfortunately, the present law is so written as to make this subterfuge possible.*

Because the Amendment becomes effective July 1, 1981 the Illinois rule has been invalid up to now.[8]

### *Applicability of 42 U.S.C. § 1396a(f)*

In 1974 Congress created SSI to replace Aid to the Aged, Blind and Disabled ("AABD"). Recipients of cash benefits under either program have qualified as categorically needy for Medicaid purposes. AABD had been a federal-state cooperative venture under which eligibility and benefit determinations were made by the states within the bounds established by the Social Security Act. SSI is wholly federally funded, with its eligibility and benefit determinations made by the Social Security Administration.

From the outset SSI eligibility levels were more liberal than prior AABD levels in several states. Those states might have suffered substantial fiscal impact as a result, for they are required to supply Medicaid assistance to all SSI recipients (because they are categorically needy). To mitigate that impact Congress enacted 42 U.S.C. § 1396a(f) ("Section 209(b)"), which basically allows a state to keep the Medicaid eligibility standard it employed on January 1, 1972:

> Notwithstanding any other provision of this subchapter . . . no State . . . shall be required to provide medical assistance to any aged, blind or disabled individual . . . for any month unless such State would be (or would have been) required to provide assistance to such individual . . . had its plan for medical assistance . . . in effect on January 1, 1972, been in effect in such month . . . .

■ Illinois exercised the option to retain its January 1, 1972 eligibility standards. On that date the Illinois transfer of assets rule was in effect. Accordingly, IDPA reasons, Section 209(b) insulates the rule from attack.

IDPA's argument could have some force against assaults based on either of two arguments:

(1) that under the so-called comparability provisions of the Social Security Act, eligibility standards may not be more restrictive for aged, blind or disabled persons than for families with dependent children or

(2) that the rule discriminates *unlawfully* against handicapped persons.[9]

---

7. Even read most favorably to IDPA, the legislative history of Boren-Long is at best inconclusive. Senator Long's statement is the most definitive evidence either side has brought to the Court's attention. Indeed if IDPA were correct in asserting the transfer of assets rules have always been permissible, there would have been no need for the Amendment.

8. Even after July 1 the Illinois rule must be modified to conform to the Amendment. Boren-Long permits the denial of Medicaid because of assets transfers, but a state's rule must not be "more restrictive than the procedure specified in section 1613(c) of this Act." Section 1613(c) requires that (1) the length of an ineligibility period correspond to the amount of the uncompensated transfer; (2) such a period not exceed 24 months unless the "uncompensated value of disposed resources exceeds $12,000" and (3) only transfers "within the preceding 24 months" be considered in applying the rule. Illinois' present rule does not meet the latter two criteria.

9. This Court has held that the transfer of assets rule impermissibly assumes that Medicaid applicants and recipients possess resources not "actually available" to them and that it is therefore invalid. Accordingly this opinion need not decide whether the rule is also invalid under plaintiffs' comparability or handicap discrimination theories.

However it is plain that Section 209(b) cannot bear on the asset availability issue. In 1972 as well as today federal law required that states take into account only resources currently available. IDPA does not argue to the contrary. Stated differently, Section 209(b) only "insulates" 1972 standards that were legal in 1972. See *Winter v. Trainor*, ¶ 28,151, CCH Medicare and Medicaid (N.D. Ill.1977).

### Plaintiffs' Motion for Class Certification and Prayer for Relief

As stated earlier in this opinion plaintiffs seek class certification, which Judge Bua has previously denied. He found that because a determination respecting the legality of the rule on plaintiffs' individual claims would necessarily "affect" all applicants, certification was unnecessary. In that regard IDPA submits that it will "uniformly apply the court's order absent a class."

This Court of course expects IDPA to honor its promise. Nonetheless it is apparent plaintiffs' present prayer for relief cannot be implemented absent certification, for it requests that defendants be required to "reprocess immediately the Medicaid applications of all class members illegally denied Medicaid benefits in the last five years, and to grant current and ongoing eligibility to those members of the class currently eligible ... but for the application of IDPA's illegal transfer of assets prohibition."

In large part IDPA has relied only on Judge Bua's ruling in opposing the present motion for class certification. And of course it has had no opportunity to comment on the propriety of plaintiffs' proposed class remedy in light of this opinion. Accordingly IDPA is given until June 30, 1981 to submit a short memorandum addressing class issues. Plaintiffs may submit a responsive memorandum on or before July 7, 1981.[10]

---

10. No submission by either side is required. This opportunity is afforded the parties so that they might bring to the Court's attention matters, if any, not previously addressed because of the posture of the case.