Evelyn RANDALL, et al., Plaintiffs,

v.

William LUKHARD, et al., Defendants.

Civ. A. No. 80–0050–C.

United States District Court,
W. D. Virginia,
Charlottesville Division.

April 16, 1982.

Herbert L. Beskin, Carlton S. Gregory, Charlottesville-Albemarle Legal Aid Society, Charlottesville, Va., for plaintiffs.

John Rupp, Robert T. Adams, Asst. Attys. Gen., Richmond, Va., E. Montgomery Tucker, Asst. U. S. Atty., Roanoke, Va., Diane Maskel, U. S. Dept. of Health & Human Services, Philadelphia, Pa., for defendants.

### OPINION and ORDER

TURK, Chief Judge.

In an effort to prevent fraud in the use of Medicaid funds, the Commonwealth of Virginia has employed a transfer of assets rule which disqualifies those Medicaid applicants or recipients who have transferred property to other persons for a consideration which is less than the fair market value of the property. Plaintiffs filed this class action challenging the Commonwealth's transfer of assets rule on the grounds that the transfer rule, as it has existed in all of its forms since 1965, violated Title XIX of the Social Security Act, as amended, and also the due process and equal protection clauses of the fourteenth amendment. This court possesses jurisdiction of these matters pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(3).

Congress established the Medicaid program in 1965 as Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.* If a state chooses to participate in the program,

the federal government will reimburse the state for a portion of the costs of medical treatment for needy persons. A participating state must develop a plan containing "reasonable standards ... for determining eligibility for and the extent of medical assistance." 42 U.S.C. § 1396a(a)(17). The plan must comply with the requirements imposed both by the Social Security Act and by the Secretary of Health and Human Services. *Id., Schweiker v. Gray Panthers*, 453 U.S. 34, 101 S.Ct. 2633, 2636, 69 L.Ed.2d 460 (1981).

When first enacted in 1965, Medicaid required participating states to provide medical assistance to "categorically needy" individuals. The "categorically needy" were persons eligible to receive cash payments under one of four welfare programs established elsewhere in the Act. 42 U.S.C. § 1396a(a)(10) (1970 ed.). A participating state also had the option, however, of providing medical assistance to the "medically needy," those persons who possessed incomes or resources too large to qualify for categorical welfare assistance, but too small to pay for their medical expenses. In assessing whether an individual qualified for medical assistance as either a "categorically needy" or "medically needy" person, a state was required to evaluate financial need using only "such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient." 42 U.S.C. § 1396a(a)(17)(B).

As of January 1, 1972, the standards promulgated by the Secretary to define the term "available" stated, in pertinent part,

(a) *State Plan requirements*: A State plan under title XIX of the Social Security Act must:

. . . .

(2) With respect to both the categorically needy and, if they are included in the plan, the medically needy:

(1) Provide that only such income and resources as *are actually available* will be considered and that income and resources will be reasonably evaluated. . . .

45 C.F.R. § 248.21(a)(2)(i) [1972] (later recodified at 42 C.F.R. § 448.3(b)(1)) (emphasis supplied).

Virginia chose to participate in the Medicaid program and, as of January 1, 1972, Virginia's program applied a transfer of assets rule to all applicants who sought medical assistance under the Old Age Assistance and Aid to the Permanently and Totally Disabled programs. In general the rule required an applicant who had transferred real or personal property within one or two years of the date of his application, for a consideration less than the fair market value of the property, to demonstrate that the transfer was not for the purpose of becoming eligible for Medicaid.[1]

In 1972 Congress revised the Social Security Act. The welfare programs aiding the aged, blind, and disabled (but not dependent children) were repealed, effective January 1, 1974. A new program, Supplemental Security Income for the Aged, Blind, and Disabled (SSI), gave the federal

---

1. As of January 1, 1972, Virginia's transfer of assets rule for Medicaid applicants, as amended, provided that

An applicant for or recipient of medicaid as a recipient of SSI or a category related to a medically needy individual is ineligible for a period of one year if he transfers or otherwise disposes of his legal or equitable interest in real or personal property within one year prior to application or during receipt of such assistance to become or remain eligible for medicaid. The transfer or disposal of such property to become or remain eligible for SSI is considered as if the transfer or disposal is to become or remain eligible for Medicaid.

Exceptions to this provision are: (1) when property has been transferred that would have no effect on eligibility except a residence when an individual is in a nursing home for a temporary period; (2) when payment has been made approximating the tax value of the property; (3) when payment has been made on the cost of medical care approximating the tax value of the property; or (4) when the property owner has been a victim of actions on the part of another person who for any reason obtained the property without the applicant's/recipient's full understanding of the action.

Virginia State Department of Welfare Medicaid Manual §§ 201.1A.3(2), 301.1(D)(3), and 402.-1(B)(3) (hereinafter cited as Va. Manual).

government the responsibility not only for partially funding payments but also for setting eligibility standards. 42 U.S.C. § 1381 *et seq.*, Pub.L. 92–603, 86 Stat. 1465 (1972). The SSI standards of need were more liberal than those used by some states under the previous state-run categorical need programs, and thus SSI confronted these states with the possibility of providing Medicaid assistance to a much larger number of persons.

"[I]n order not to impose a substantial fiscal burden on these States" or discourage them from participating in Medicaid, Congress created the "§ 209(b) option", S.Rep. No.553, 93d Cong., 1st Sess., 56 (1973). By exercising this option a state could ignore the more liberal SSI Medicaid eligibility standards and provide Medicaid assistance only to those persons who would have been eligible for the state Medicaid plan in effect on January 1, 1972. 42 U.S.C. § 1396a. Virginia chose to exercise the § 209(b) op-

tion. Therefore the Commonwealth continued to apply a transfer of assets rule to aged, blind, and disabled applicants for Medicaid, as it had done on January 1, 1972.

Plaintiffs filed this class action on April 24, 1980, seeking declaratory and injunctive relief on the grounds that Virginia's transfer of assets rule violated Title XIX of the Social Security Act and the due process and equal protection clauses of the fourteenth amendment. Subsequently, on December 28, 1980, President Carter signed Amendment No. 1936 to the Pneumococcal Vaccine Act, H.R. 8406, Section 5 of Public Law 96–611 (the Boren-Long Amendment). Despite its title, the Amendment in part permitted all state Medicaid plans to employ a transfer of assets rule which presumed that a transfer of property for less than fair market value within the previous 24 months was for the purpose of becoming eligible for Medicaid.[2] To rebut the presumption an applicant must offer "convincing evidence"

2. Section 5 of the Boren-Long Amendment states:

(a) Section 1613 of the Social Security Act is amended by adding at the end thereof the following new subsection:

"Disposal of Resources for Less Than Fair Market Value

"(c)(1) In determining the resources of an individual (and his eligible spouse, if any) there shall be included (but subject to the exclusions under subsection (a)) any resources (or interest therein) owned by such individual or eligible spouse within the preceding 24 months if such individual or eligible spouse gave away or sold such resource or interest at less than fair market value of such resource or interest for the purpose of establishing eligibility for benefits or assistance under this Act.

"(2) Any transaction described in paragraph (1) shall be presumed to have been for the purpose of establishing eligibility for benefits or assistance under this Act unless such individual or eligible spouse furnishes convincing evidence to establish that the transaction was exclusively for some other purpose.

"(3) For purposes of paragraph (1) the value of such a resource or interest shall be the fair market value of such resource or interest at the time it was sold or given away, less the amount of compensation received for such resource or interest, if any."

(b) Section 1902 of the Social Security Act is amended by adding at the end thereof the following new subsection:

(j)(1) Notwithstanding any other provision of this title, an individual *who would otherwise be eligible for medical assistance under the State plan approved under this title* may be denied such assistance if such individual would not be eligible for such medical assistance but for the fact that he disposed of resources for less than fair market value. If the State plan provides for the denial of such assistance by reason of such disposal of resources, the State plan shall specify a procedure for implementing such denial which, except as provided in paragraph (2), *is not more restrictive than the procedure specified in section 1613(c) of this Act.*

"(2) In any case where the uncompensated value of disposed of resources exceeds $12,-000, the State plan may provide for a period of ineligibility which exceeds 24 months. If a State plan provides for a period of ineligibility exceeding 24 months, such plan shall provide for the period of ineligibility to bear a reasonable relationship to such uncompensated value.

"(3) In any case where an individual is ineligible for medical assistance under the State plan solely because of the applicability to such individual of the provisions of section 1613(c), the State plan may provide for the eligibility of such individual for medical assistance under the plan if such individual would be so eligible if the State plan requirements with respect to disposal of resources applicable under paragraphs (1) and (2) of this subsection were applied in lieu of the provisions of section 1613(c)."

that the transfer was made exclusively for some other purpose. *Id.; codified at* 42 U.S.C. § 1382b(c)(2). Virginia accordingly developed a new transfer of assets rule to conform with the Boren-Long Amendment.[3] By leave of the Court plaintiffs then amended their complaint to challenge Virginia's new transfer rule as well as its previous rule.

Plaintiffs are various individuals who have either been disqualified from Medicaid eligibility at some time because of the transfer of assets rule or who have been informed by Virginia Medicaid officials that if they applied for Medicaid benefits, their application would be denied because of the transfer rule. Thus each plaintiff has either exhausted his administrative remedies or discovered that to do so would be futile. Plaintiffs now seek certification of three classes of individuals pursuant to Fed.R. Civ.P. 23(b)(2), as well as summary judgment against defendants in their official capacity as the Secretary of the United States Department of Health and Human Services, Commissioner of the Virginia Department of Welfare, the Commonwealth's Commissioner of Health, and the Director of the Virginia Medical Assistance Program. Defendants also have moved for summary judgment.

> (c) The amendment made by subsection (a) [of § 5 of this Act] shall be effective with respect to applications for benefits under title XVI of the Social Security Act filed on or after the first day of the month which begins at least 60 days after the date of enactment of this Act.
>
> Pub.L.No.96–611, § 5, 94 Stat. 3567 (1980).

3. The Commonwealth's new transfer rule, effective July 1, 1981, reads as follows:

> *Property Transfer*—Any applicant for medicaid benefits is ineligible for a specified period of time if he/she improperly transfers or otherwise disposes of his/her legal or equitable interest in real or personal property without adequate compensation within two years prior to application for assistance. A recipient of medicaid benefits is ineligible for a specified period of time if he/she improperly transfers or otherwise disposes of his/her legal or equitable interest in real or personal property within two years of the discovery of that transfer. Such a transfer of property will result in the ineligibility of the assistance unit for two years from the date of transfer if the uncompensated value was $12,000 or less. The period of ineligibility will· be increased two months for every $1,000 or part thereof of uncompensated value in excess of $12,000. The amount of the uncompensated value is the fair market value of the property, or the client's interest in the property, established for local tax purposes, less the amount of any compensation received for the property. Exceptions to this provision occurr when:

> a. A transfer of property as not made in an effort to become or remain eligible for medicaid or SSI. It will be the responsibility of the client to establish that such a transfer was not made in an effort to qualify for medicaid or SSI. The client must provide objective evidence that the transfer was exclusively for another purpose. A subjective statement of intent or ignorance of the property transfer provision is not sufficient. The client must provide evidence that other resources were available, at the time of transfer, to meet current and expected needs of that client, including cost of nursing home care.

> b. Retention of the property would have no effect on eligibility unless the property is a residence of an individual in a nursing home for a temporary period.

> c. When the transfer of property resulted in compensation to the client which approximates the equity value of the property. This compensation can be in the form of money, goods or services. The value of goods and services must be reasonable for the community. The value of services provided by a member of the immediate family must be a reasonable rate established prior to receipt of the services.

> d. When payment has been made on the cost of medical care which approximates the equity value of the property.

> e. Disposition was the result of actions by another person, except a legal guardian or committee, who for any reason obtained the property without the client's full understanding of the action.

> f. An improper transfer of property made by a caretaker–relative other than the parent will have no effect on the eligibility of the children.

> Va. Manual §§ 301.1(D)(3) and 402.1(B)(3) (1981).

## I

■ Pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, the Court will certify the following three classes of plaintiffs:

(a) All those elderly, blind or disabled persons who (1) applied for Medicaid through the Virginia Medical Assistance Program before July 1, 1981; (2) at the time of their application met all the Medicaid eligibility requirements except the Virginia transfer of assets rule; and (3) were denied Medicaid because of the application of this rule to property which they transferred before July 1, 1979. Plaintiffs Morse and Miller represent this class.

(b) All those elderly, blind or disabled persons who (1) applied for Medicaid through the Virginia Medical Assistance Program before July 1, 1981; (2) at the time of their application met all the Medicaid eligibility requirements except the Virginia transfer of assets rule; and (3) were denied Medicaid because of the application of this rule to property which they transferred on or after July 1, 1979. Plaintiffs Matthews, Lamb, Smith and Pompey and Rachel Wingo represent this class.

(c) All those elderly, blind or disabled persons who (1) applied for Medicaid through the Virginia Medical Assistance Program on or after July 1, 1981; (2) at the time of their application met all the Medicaid eligibility requirements except the requirements of the Virginia transfer of assets rule; and (3) were denied Medicaid benefits because of the application of the Virginia rule to property which they transferred on or after July 1, 1979. Plaintiff Evelyn Randall represents this class.

The record contains sufficient evidence that each class is so numerous that joinder of its members is impracticable; that common questions of law or fact exist; that plaintiffs' claims are typical of the claims of each class; and that each plaintiff is an adequate representative of his or her designated class. Furthermore, defendants have acted on grounds generally applicable to each class.

## II

■ The Court finds that the transfer of assets rule employed in the Virginia Medicaid program prior to July 1, 1981, was inconsistent with section 1902(a)(17)(B) of the Social Security Act, 42 U.S.C. § 1396a(a)(17)(B). In particular, Virginia's former transfer rule violated the statutory requirement that a state plan take into account "only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant." *See* 42 U.S.C. § 1396a(a)(17)(B). Since the transfer rule is invalid in this regard, the Court declines to address plaintiff's other statutory and constitutional challenges to Virginia's former transfer rule. *See Swain v. Pressley,* 430 U.S. 372, 378 n. 11, 97 S.Ct. 1224, 1228 n. 11, 51 L.Ed.2d 411 (1977).

■ As noted previously, in choosing the § 209(b) option Virginia could continue to apply the same eligibility standards it used on January 1, 1972. By enacting the § 209(b) option, however, Congress did not intend to validate every eligibility standard applied on January 1, 1972, without regard to its legality at that time. If a state regulation was invalid on January 1, 1972, under then-existing law, it was also invalid on January 1, 1974, when the § 209(b) option became available. As the Fifth Circuit stated in *Norman v. St. Clair,* 610 F.2d 1228 (5th Cir. 1980), *cert. denied,* 453 U.S. 922, 101 S.Ct. 3159, 69 L.Ed.2d 1005 (1981),

Although § 209(b) allows states to use standards more restrictive than those under the SSI program, the provision can

not be viewed as an all-purpose "grandfathering" clause which effectively legitimizes any and every provision appearing in a state plan in 1972. We find no indication that in passing § 209(b) Congress intended to authorize otherwise improper procedures. In other words, if, in January, 1972, the state's . . . procedure was impermissible under 42 U.S.C. § 1396a(a)(17), it cannot now be made acceptable simply because of § 209(b).

610 F.2d at 1235. *Accord, Lewis v. Shulimson*, 400 F.Supp. 807, 810 (E.D.Mo.1975), aff'd, 534 F.2d 794 (8th Cir. 1976), *cert. denied*, 430 U.S. 940, 97 S.Ct. 1570, 51 L.Ed.2d 786 (1977).

As of January 1, 1972, Virginia's transfer of assets rule directly contradicted the Secretary's prescription that a state plan consider only resources which "are actually available" in determining an applicant's eligibility for Medicaid. *See* 45 C.F.R. § 248.-21(a)(2)(i) [1972] (later recodified at 42 C.F.R. § 448.3(b)(1)). The transfer rules presumed that a Medicaid applicant possessed resources which he in fact did not possess at the time of his application. If an applicant had transferred an asset prior to his application, that asset was not actually available to the applicant. By promulgating a regulation which violated the Secretary's own regulations, the Commonwealth in turn violated 42 U.S.C. § 1396a(a)(17)(B), which provides that states evaluate financial need using resources which are "available," "as determined in accordance with standards prescribed by the Secretary."

At least two other courts have also invalidated transfer of assets rules for this same reason. *See Dokos v. Miller*, 517 F.Supp. 1039 (N.D.Ill.1981), and *Woodard v. St. Clair*, No. J 78–0274(R) (S.D.Miss. Dec. 17, 1980). As the *Dokos* court stated, "the Federal provisions leave no room for recasting as 'actually available' any assets that the recipient or applicant has in fact relinquished." 517 F.Supp. at 1044. *See also Buckner v. Maher*, 424 F.Supp. 366 (D.Conn. 1976), aff'd, 434 U.S. 898, 98 S.Ct. 290, 54 L.Ed.2d 184 (1977). More importantly, the recent decision of the Supreme Court in

*Schweiker v. Gray Panthers*, 453 U.S. 34, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981), supports this interpretation of the law.

In *Gray Panthers* plaintiffs challenged as arbitrary and capricious a *federal* regulation permitting states to count the income of a spouse as a portion of the income and resources available to a Medicaid applicant, even if the spouse's income was not actually contributed to the spouse. *See* 42 U.S.C. § 1396a(a)(17)(D); 42 C.F.R. § 435.723 (1981). The plaintiffs argued that this "deeming" of income violated § 1396a (a)(17).

The Court held that the regulation was valid. As the starting point for its analysis, the Court discussed the broad authority which Congress delegated to the Secretary to promulgate Medicaid eligibility requirements. 101 S.Ct. at 2640. Not only does the complexity of the Social Security Act require deference to the Secretary's regulations, but the Act itself authorizes the Secretary to prescribe regulations which define the income and resources available to a Medicaid applicant. *Id.; see* 42 U.S.C. § 1396a(a)(17)(B). Given this statutory delegation of authority,

> the Secretary's definition of the term "available" is "entitled to more than mere deference or weight." *Batterton v. Francis*, 432 U.S., [416] at 426 [97 S.Ct. 2399, 2406, 53 L.Ed.2d 488]. Rather, the Secretary's definition is entitled to "legislative effect" because, "[i]n a situation of this kind, Congress entrusts to the Secretary, rather than to the courts, the primary responsibility for interpreting the statutory term." *Id.*, at 425 [97 S.Ct. at 2405]. Although we do not abdicate review in these circumstances, our task is the limited one of ensuring that the Secretary did not "excee[d] his statutory authority" and that the regulation is not arbitrary or capricious. *Id.*, at 426 [97 S.Ct. at 2406].

101 S.Ct. 2640.

The Court then proceeded to find that the Secretary's regulation was not arbitrary or capricious.

Thus *Gray Panthers* establishes that the Secretary's definition of "available" income and resources cannot be taken lightly. Given the direct conflict in this instance between a federal regulation and Virginia's 1972 transfer of assets rule, the federal regulation controls. *Townsend v. Swank*, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971). Therefore as of January 1, 1972, the transfer rule was invalid and Virginia was not entitled to employ the rule on January 1, 1974, when it chose the § 209(b) option.

The Court is aware that 45 C.F.R. § 248.-21(a)(2)(i) created an unfortunate loophole that allows some Medicaid applicants to become eligible by fraudulently transferring their assets. In light of the *Gray Panther* decision, however, the Court cannot disregard the Secretary's regulations and impose a judicial solution. Congress should provide a remedy, and indeed it has by enacting the Boren-Long Amendment. As the Fourth Circuit noted in *Fabula v. Buck*, 598 F.2d 869 (4th Cir. 1979),

> while we sympathize with the state's desire to restrict its medical assistance benefits to those most in need, "a State's interest in preserving the fiscal integrity of its welfare program by economically allocating limited ... resources may not be protected by the device of adopting eligibility requirements restricting the class of [individuals] made eligible by federal standards."

598 F.2d at 873 (citing *Townsend v. Swank*, 404 U.S. at 291, 92 S.Ct. at 507–08).

■ Defendants nevertheless contend that 45 C.F.R. § 248.21(a)(2)(i) does not apply to a transfer of assets rule. Rather, defendants argue that the regulation merely specifies what resources to count in calculating the income and resources presently held by the applicant and that it does not address a state's effort to prevent fraudulent abuse of Medicaid monies. These are merely semantic distinctions. Regardless of the purpose of a transfer of assets rule, it is an eligibility standard. *Fabula v. Buck*, 598 F.2d 869, 873–74 (4th Cir. 1979). The title to 45 C.F.R. § 248.21 is "Financial eligibili-

ty—medical assistance programs." The literal language of the regulation leaves no doubt that it applies to all eligibility standards. There is no qualifying language that limits it to "mathematical calculations," as defendants suggest.

■ Defendants also assert that this issue is moot because the administrative time limits for obtaining reimbursement for medical care have elapsed, and that injunctive and declaratory relief are of no avail. The Court disagrees. The injunctive relief requested by plaintiffs would merely require defendants to notify the members of the plaintiff class of their possible remedies for obtaining reimbursement from the Commonwealth. As the Supreme Court noted in *Quern v. Jordan*, 440 U.S. 332, 349, 99 S.Ct. 1139, 1149, 59 L.Ed.2d 358 (1979), such notice "in effect simply informs class members that their federal suit is at an end, that the federal court can provide them with no further relief, and that there are existing state administrative procedures which they may wish to pursue." Whether class members would have to pursue administrative remedies, file a court action, or seek legislative assistance is not relevant to the propriety of notifying plaintiffs of their Medicaid rights. 440 U.S. at 348, n. 20, 99 S.Ct. at 1149, n. 20. These are matters of state law which contain "numerous missing links, which can be supplied, if at all, only by the state and members of the plaintiff class and not by a federal court." *Id.* at 347, 99 S.Ct. at 1148.

Finally, defendant complains of the cost of individual notice to each member of the class. Individual notice is not automatic, however. Rather, it is within the Court's discretion to determine the method of notice "best calculated to reach the aged, blind and disabled class members without imposing an unreasonable burden on the state." *Fabula v. Buck*, 598 F.2d 869, 874 (4th Cir. 1979). The Court will determine the appropriate notice only after allowing the parties to present their suggestions on this issue.

For these reasons Virginia's transfer of assets rule, prior to the effective date of the

Boren-Long Amendment on July 1, 1981, violates 42 U.S.C. § 1396a(a)(17)(B) and the 1972 regulations implementing § 1396a(a)(17)(B). Summary judgment against defendants concerning this issue will be granted.

### III

As for the new transfer of assets rule issued by Virginia following enactment of the Boren-Long Amendment, plaintiffs contend that the rule contravenes the requirements of the Amendment in three respects. First, Virginia's rule defines "resources" more narrowly than the SSI transfer rule. In particular the SSI rule exempts a greater amount of property from the transfer of assets rule. *See* 42 U.S.C. § 1382b(a). Virginia has also chosen to apply its new two-year transfer rule not only to new applications for benefits which were filed after July 1, 1981, but also to redeterminations of a person's eligibility as to claims filed after July 1, 1981. And finally, plaintiffs challenge the administrative regulations issued by Virginia which interpret the "convincing evidence" standard necessary to rebut the presumption of fraud.

### A.

■ As noted previously, the Boren-Long Amendment created a new transfer of assets rule which could be used in both SSI and state Medicaid programs. Section (a) of the Amendment pertains to the SSI transfer rule and provides that any resources transferred within the past 24 months are counted in determining an individual's eligibility, "but subject to the exclusions under [42 U.S.C. § 1382b(a)]." These exclusions specify the resources *not* taken into account in determining a person's eligibility. 42 U.S.C. § 1382b(a). Section (b) of the Boren-Long Amendment authorizes state Medicaid programs to implement a transfer of assets rule similar to the SSI rule as long as the state rule uses a "procedure" which is "not more restrictive than the procedure specified" for the SSI rule. Plaintiffs argue that the phrase "not more restrictive than" requires Virginia to use the same resource exclusions as those listed in § 1382b(a).

The key issue is whether the word "procedure" was intended to refer to the SSI exclusions, such that § 209(b) states must incorporate the § 1382b(a) exclusions into their transfer rules.

In interpreting the words of a statute, the Court has "some 'scope for adopting a restricted rather than a literal or usual meaning of its words where acceptance of that meaning would lead to absurd results ... or would thwart the obvious purpose of the statute' ... [b]ut it is otherwise 'where no such consequences would follow and where ... it appears to be consonant with the purposes of the Act....'" *Trans Alaska Pipeline Rate Cases*, 436 U.S. 631, 643, 98 S.Ct. 2053, 2061, 56 L.Ed.2d 591 (1978) (citations omitted). In this instance to accept that the word "procedure" includes the SSI exclusions of § 1382b(a) would lead to absurd results which would thwart the purpose of the Boren-Long Amendment. Therefore the Court finds that Virginia may continue to apply its narrower exclusions in using a transfer rule.

As a § 209(b) state, the Commonwealth has adopted a list of exclusions which is more restrictive than that used by SSI. Va. Manual § 301.1D(2)(a)(1). Virginia uses these exclusions to count the resources available to every Medicaid applicant. These exclusions also apply to resources which have been transferred and are presumed to be available to the applicant. To adopt plaintiffs' reading of the Boren-Long Amendment would require that Virginia use its § 209(b) exclusions in counting the income and resources actually held in-hand by an applicant, but that it used the broader SSI list of exclusions in applying its transfer of assets rule. This use of two different sets of exclusions leads to a result wholly inconsistent with the purposes of the Boren-Long Amendment.

For instance, Virginia presently considers as an available resource property contiguous to a home; only the home itself is excluded from consideration. The SSI excludes both the home and contiguous prop-

erty as countable resources. 42 U.S.C. § 1382b(a)(1). If in applying its transfer of assets rule Virginia had to use the § 1382b exclusions, then contiguous property transferred for less than its fair market value before a person applied for Medicaid would not be counted as a resource. If the same applicant had kept that contiguous property, however, then at the time of his applying for Medicaid Virginia would use its narrower § 209(b) exclusions, and the contiguous property would then be counted as a resource. Thus there would be an incentive for individuals to transfer contiguous property for less than its fair market value in order to avoid that property from being counted as a resource when they applied for Medicaid.

Such a result directly conflicts with the purpose of the Boren-Long Amendment. As one Congressman stated, the Amendment "is designed to try to discourage people from transferring assets for the purpose of qualifying for these public programs." 126 Cong.Rec. H 12,500 (daily ed. Dec. 13, 1980) (remarks of Rep. Conable). *See also* 126 Cong.Rec. S 16,505–06 (daily ed. Dec. 13, 1980) (remarks of Sen. Long). If Virginia were required to use two different sets of exclusions in counting an applicant's resources, it would be in an applicant's favor for him to transfer those resources which, though excluded under the broad § 1382b exclusions, would be included by Virginia's policies if he held them until he applied for Medicaid.

Plaintiffs challenge this interpretation of the statute by arguing that the drafters intended to impose a single transfer rule upon every state Medicaid program. They point out that no language in the amendment differentiates between § 209(b) states and SSI states. Plaintiffs also note that the phrase "notwithstanding any other pro-

vision of this title" gives precedence to the Amendment over any other conflicting statutory provisions.[4] The Court declines to accept these arguments. Although the Amendment fails to differentiate between § 209(b) states and SSI states, it also suggests no intention to create an incentive for persons to transfer their assets in anticipation of applying for benefits. Plaintiffs cannot point to any legislative history of the Amendment which expressly states that the word "procedure" necessarily refers to the § 1382b(a) exclusions. As for the "notwithstanding" language, it sheds little light on how the word "procedure" should be construed.

For these reasons the Court concludes that the Boren-Long Amendment does not require that Virginia use the exclusions of 42 U.S.C. § 1382b(a) in applying its present transfer of assets rule.

### B.

Plaintiffs next contest Virginia's new transfer of assets rule on the grounds that it is improperly being applied to applications for benefits and to claims for reimbursement which were filed before July 1, 1981. Section 5(c) of the Boren-Long Amendment states that the SSI transfer of assets rule applies only to applications for benefits filed *after* the effective date of the Amendment. Therefore plaintiffs reason that Virginia may not now apply its new transfer rule to Medicaid applications filed *before* July 1, 1981, the date on which the Amendment became applicable to the states.[5] In response defendants contend that the Boren-Long Amendment does not address whether Virginia's transfer rule applies to applications filed before July 1, 1981, such that Virginia possesses the discretion to apply its rule in a manner consistent with the purposes of the statute.

---

4. Plaintiffs also cite the decision in *Beltran v. Myers*, No. 78–2350 CBM (Mx) (C.D.Cal. July 30, 1981) in support of their position. *Beltran*, however, did not concern a § 209(b) state program. Nor did the *Beltran* court appear to consider the consequences of imposing the § 1382b(a) exclusions upon a state transfer of assets rule if the state were allowed to use narrower exclusions at other times.

5. Although March 1, 1981, was the effective date of the Boren-Long Amendment as to the SSI transfer rule, the effective date as to the transfer rule used by state Medicaid transfer rules was July 1, 1981. *Cf.* Pub.L.No.96–611 §§ 5(c) *with* 2.

With regard to applications for SSI benefits, the Amendment provides that the SSI transfer of assets rule applies only to applications filed after March 1, 1981. Pub.L. No.96–611, § 5(a), 94 Stat. 3568 (1980). The Secretary has issued regulations which similarly apply the SSI transfer rule to redeterminations of eligibility regarding claims filed after March 1, 1981. *See* 46 Fed.Reg. § 1779 (Oct. 22, 1981), to be *codified at* 20 C.F.R. § 416.1246(f). The Amendment does not explicitly address, however, whether § 209(b) states, in contrast to the SSI policy, may apply their new transfer rules to applications and claims filed before July 1, 1981.

In construing the Boren-Long Amendment, the Court presumes that Congress was aware of other existing provisions of the Social Security Act. *Cannon v. University of Chicago*, 441 U.S. 677, 697, 99 S.Ct. 1946, 1958, 60 L.Ed.2d 560 (1979). The Amendment is but one piece of a complex statute, and therefore it should be read in a manner consistent with other pertinent statutory provisions. *Herweg v. Ray*, —— U.S. ——, ——, 102 S.Ct. 1059, 1067, 71 L.Ed.2d 137 (1982).

 Transfer of assets rules are eligibility standards. *Fabula v. Buck*, 598 F.2d 869, 874 (4th Cir. 1979). Therefore a state transfer rule must conform not only to the requirements of the Boren-Long Amendment, but also to other statutory provisions governing eligibility standards. As a § 209(b) state, Virginia may impose Medicaid eligibility standards which are more restrictive than the SSI standards only if Virginia applied its more restrictive standards as of January 1, 1972. 42 U.S.C. § 1396a(f); 42 C.F.R. § 435.121(b)(1) (1980). In all other cases, Virginia "must provide Medicaid to aged, blind and disabled individuals or couples who receive SSI. . . ." 42 C.F.R. § 435.120 (1980).

Unlike the new SSI transfer of assets rule, Virginia has applied its transfer rule to applications and claims filed before July 1, 1981. "A recipient of Medicaid benefits is ineligible for a specified period of time if he/she improperly transfers [assets] *within*

*two years of the discovery of that transfer.*" Va. Manual §§ 301.1(D)(3) and 402.-1(B)(3) (1981) (emphasis supplied). Thus, an SSI applicant who filed before March 1, 1981, would not be subject to the transfer restrictions, whereas a Virginia Medicaid applicant who filed before the effective date of the Amendment would be subject to the restrictions. The Virginia rule is therefore more restrictive than the SSI rule. Just as the SSI rule does not apply to applications or claims filed before the effective date of the Boren-Long Amendment, so Virginia may not apply its two-year transfer rule to applications or claims filed before the effective date of July 1, 1981.

There is no indication that by enacting the Boren-Long Amendment Congress intended to give states free reign in designing their own transfer rules only so long as the rules conformed to the language of the Amendment that they be "not more restrictive than the procedure specified" for the SSI rule. Although Senator Long spoke of the Act as giving the states "more flexibility," he was referring only to paragraph 2 of section 5(b), which allows states to lengthen the disqualification period beyond two years in certain instances. *See* 126 Cong.Rec. § 16,505 (daily ed. Dec. 13, 1980). Nothing in the language of the Amendment or in the legislative history suggests that Congress intended to change or alter the applicability of § 1396a(f) and § 1396a(a)(17)(B). Absent such an intent, Virginia may not impose a new transfer of assets rule which is more restrictive than the SSI rule, unless such rule was valid and in use as of January 1, 1972. In this instance the rule did not exist in 1972, and it is more restrictive than its SSI counterpart. Therefore the Commonwealth's present policy of applying the two-year rule to applications and redeterminations filed before July 1, 1981, is invalid.

C.

 Plaintiff's third challenge to Virginia's two-year transfer of assets rule concerns the Commonwealth's regulations defining the type of "convincing evidence" required to rebut the presumption of fraud.

In particular plaintiffs contend that Virginia's interpretation is more restrictive than the corresponding SSI interpretations of "convincing evidence," in violation of 42 U.S.C. § 1396a(j)(1).[6] The pertinent part of the challenged regulation states,

> A subjective statement of intent or ignorance of the property transfer provision is not sufficient [to rebut the presumption of fraud]. The client must provide evidence that other resources were available, at the time of transfer, to meet current and expected needs of that client, including cost of nursing home care.

Va. Manual §§ 301.1(D)(3) and 402.1(B)(3). In response defendants point out that the administrative criteria for the "convincing evidence" standard promulgated by the federal Department of Health and Human Services is as restrictive as the Commonwealth's own criteria.

Assuming that the interpretation of the term "convincing evidence" by a § 209(b) state may not be more restrictive than the criteria applied to SSI applicants, Virginia's interpretation of "convincing evidence" is valid.

The Secretary's regulations implementing the Boren-Long Amendment with regard to SSI applicants state that "[c]onvincing evidence may be pertinent documentary evidence (for example, legal documents, real-tor agreements, relevant correspondence, etc.)." 46 Fed.Reg. 51779 (to be codified in 20 C.F.R. § 416.1246(e)). The Department of Health and Human Services has also drafted criteria for its SSI claims manual which establish standards for rebutting the presumption of fraud.[7] The Secretary's regulations and these administrative criteria differ little from Virginia's "convincing evidence" standard. Neither the federal guidelines nor the regulations suggest that a subjective statement of intent is sufficient to rebut the presumption. Rather, they require investigation of the claimant's attempts to dispose of the property at its fair market value, of the alternative means by which the claimant could support himself after the transfer, and of the claimant's relationship to the person who purchased the property. The federal criteria also explicitly refer to documentary evidence as significant rebuttal evidence.

Virginia's policy of not permitting a subjective statement of intent to rebut the presumption is consistent with the Secretary's interpretation. The federal administrative criteria impliedly require more than a subjective statement of intent, because the SSI claims worker must collect much more information than merely the claimant's reason for transferring the property. If a single statement of intent were ade-

---

**6.** Section 5(a) of the Boren-Long Amendment states in part,

> Any transaction [in which property has been sold for less than its fair market value] shall be presumed to have been for the purpose of establishing eligibility for benefits or assistance under this Act unless such individual or eligible spouse furnishes convincing evidence to establish that the transaction was exclusively for some other purpose.

Pub.L.No.96–611, § 5(a), 94 Stat. 3567 (1980) (codified at 42 U.S.C. § 1382b(c)(2)).

**7.** Section A12505.S of the SSI Claims Manual (revised as of October, 1981), provides in part:

> If the claimant wishes to rebut the presumption that resources were transferred for the purpose of establishing SSI eligibility, explain that it will be his/her responsibility to present convincing evidence that the resources were transferred exclusively (i.e., only) for some other reason. Take the claimant's statement concerning the circumstances of the transfer.... (If C below applies, this statement is not required.) The statement should cover, but need not be limited to, the following factors:
> 1. The claimant's purpose for transferring the resource.
> 2. The claimant's attempts to dispose of the resource at FMV.
> 3. The claimant's reasons for accepting less than FMV for the resource.
> 4. The claimant's means of or plans for supporting himself/herself after the transfer.
> 5. The claimant's relationship, if any, to the persons to when the resource was transferred.
> 6. The claimant's belief (considering age and background) that fair market value was received.
> Request the claimant to submit any pertinent documentary evidence (e.g., legal documents, realtor agreements, relevant correspondence, etc.) Statements on SSA–795's from other individuals may be obtained if material to the decision.

quate, there would be little need for this additional information. Similarly, the SSI criteria explicitly require an examination of a claimant's additional means of supporting himself after the transfer; Virginia's regulations require the same. Thus, Virginia has established policies regarding adequate rebuttal evidence which interpret the phrase "convincing evidence" in a manner consistent with the Secretary's interpretation.

 Virginia's interpretation of "convincing evidence" is also justified as a reasonable policy which serves the purposes of the Boren-Long Amendment. The term "convincing" is ambiguous. It could not be used uniformly unless a state agency possessed some discretion to make the term concrete and specific. Unlike the concept of "availability" in 42 U.S.C. § 1396a(a)(17), Congress has not specified that "convincing evidence" must be defined in accordance with regulations promulgated by the Secretary. *Cf. Herweg v. Ray,* —— U.S. ——, ——, 102 S.Ct. 1059, 1066, 71 L.Ed.2d 137 (1982), and *Schweiker v. Gray Panthers,* 453 U.S. 1, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981) (Congress' explicit delegation of authority to give substance to a term entitles the Secretary's definition to legislative effect). Therefore, a measure of discretion rests with the Secretary and the states, both of whom bear the joint responsibility of implementing the Boren-Long Amendment, to define "convincing evidence" reasonably and consistently with the purposes of the statute. *New York Dept. of Social Services v. Dublino,* 413 U.S. 405, 421–22, 93 S.Ct. 2507, 2516–17, 37 L.Ed.2d 688 (1973). The Court finds that the Commonwealth's policy concerning convincing rebuttal evidence is not only reasonable and consistent with the purposes of the Amendment, but it also is no more restrictive than the Secretary's interpretation of "convincing evidence." Therefore defendants' motion for summary judgment will be granted as to this portion of plaintiff's allegations.

### IV

In accordance with the preceding portions of this opinion, defendants' motion for sum-

mary judgment will be granted against plaintiff Randall and the class which she represents. The remainder of defendants' motion will be denied, however, as to the remaining two classes of plaintiffs and summary judgment entered in favor of these classes.

The parties are invited to submit a proposed order granting summary judgment and declaratory and injunctive relief consistent with this opinion within fourteen (14) days of the date of its entry. At that time plaintiffs may also file their proposal for notifying members of the two prevailing plaintiff classes about the court's decision and the procedures by which they may seek retroactive benefits. Within seven (7) days of the filing of plaintiffs' proposed notice, defendants may file a response and counter-proposal.