Marie **SYNESAEL**, et al.,
**Plaintiffs-Appellants,**
v.
David **LING**, et al.,
**Defendants-Appellees.**

No. 82–1038.

United States Court of Appeals,
Seventh Circuit.

Argued June 7, 1982.

Decided Oct. 20, 1982.

Rehearing and Rehearing En Banc
Denied Jan. 20, 1983.

Gregory S. French, Legal Services Program of Northern Indiana, South Bend, Ind., for plaintiffs-appellants.

Gary L. Shaw, Deputy Atty. Gen., Indianapolis, Ind., for defendants-appellees.

Before CUMMINGS, Chief Judge, POSNER, Circuit Judge, and DECKER,* Senior District Judge.

POSNER, Circuit Judge.

This appeal is from an order upholding the validity of an Indiana regulation limiting the Medicaid benefits that may be received by individuals who transfer assets in order to establish eligibility for Medicaid. The regulation provides that if a transfer for inadequate consideration was made not more than five years before the application was made, and the "uncompensated value" of the assets transferred, which is to say the difference between what they were worth and what the transferor actually received, exceeded $12,000, the transfer will be presumed to have been made for the purpose of establishing eligibility. Unless this presumption is rebutted, the applicant is ineligible to receive Medicaid benefits until he has incurred medical expenses equal to the uncompensated value of the transfer. But the period of ineligibility has a cap: two years if the uncompensated value does not exceed $12,000, five years if it does.

* Of the Northern District of Illinois.

The regulation thus has two parts: a five-year "reach-back" provision, and a formula for determining the period of ineligibility if an improper transfer is found. Both parts are challenged in this appeal as contrary to the Boren-Long amendment, which is section 5(a) and (b) of Pub.L. 96–611, 94 Stat. 3567 (Dec. 28, 1980).

Section 5(b) adds to 42 U.S.C. § 1396a a new subsection, (j)(1), which provides that "notwithstanding any other provision of this subchapter" a state may deny Medicaid to an otherwise eligible applicant who would not have been eligible had he not transferred assets for less than their fair market value. However, if the state wants to take up this option it must "specify a procedure ... which ... is not more restrictive than the procedure specified in" 42 U.S.C. § 1382b(c), added by section 5(a), which requires that in determining eligibility for assistance under certain other federal welfare programs assets transferred at less than fair market value within the preceding two years must be counted among the applicant's assets. The Indiana regulation requiring that some assets transferred at less than market value be counted even if they were transferred more than two years before the application for Medicaid was made seems inconsistent with the terms of section 1382b(c); but before concluding that it is we must consider the special status of Indiana under the Medicaid program.

When Congress expanded Medicaid eligibility in 1972, it gave the states an option to limit Medicaid assistance to people who would have been eligible under the state's plan that was in effect on January 1 of that year. See 42 U.S.C. § 1396a(f); 42 C.F.R. § 435.121. States that have taken up this option, and Indiana is one of them, are known as "section 209(b)" states. Those that do not, that offer broader coverage, are known as "SSI" states. See *Schweiker v. Gray Panthers,* 453 U.S. 34, 38–39, 101 S.Ct. 2633, 2637–2638, 69 L.Ed.2d 460 (1981). The parties agree that under the Indiana Medicaid plan in force on January 1, 1972,

applicants who had transferred assets at any time within the preceding five years either for the purpose or with the effect of establishing eligibility for Medicaid were ineligible by virtue of Ind.Code §§ 12–1–5–1(f), 12–1–7–14.9. We therefore have to decide whether the Boren-Long amendment was intended to broaden Medicaid eligibility in 209(b) states. If so, Indiana's five-year reach-back provision presumably would be invalid on the authority of such cases as *Beltran v. Myers,* 677 F.2d 1317, 1320–21 (9th Cir. 1982), dealing with similar provisions in SSI states. But if Congress's intent was only to allow states to disqualify applicants who previously had been eligible even though they had transferred assets for less than fair market value, then Indiana's special status as a 209(b) state, coupled with the fact that its five-year reach-back provision dates back to January 1, 1972, would make the Indiana regulation valid.

We find—in agreement with the only decision we have found that deals with the question, *Randall v. Lukhard,* 536 F.Supp. 723, 732–33 (W.D.Va.1982)—no indication in the language or history of the amendment that Congress wanted to broaden Medicaid eligibility in section 209(b) states. It is true that 42 U.S.C. § 1396a(j)(1) is introduced by the words "notwithstanding any other provision of this subchapter," and the subchapter includes section 1396a(f), which created the section 209(b) exemption. But the quoted words do not introduce the "not more restrictive" provision in section 1396a(j)(1), which is in the second sentence of the section; they introduce the first sentence, the remainder of which reads, "an individual who would otherwise be eligible for medical assistance under the State plan approved under this subchapter may be denied such assistance if such individual would not be eligible for such medical assistance but for the fact that he disposed of resources for less than fair market value." In context the introductory words just mean that notwithstanding any statutory provision that might appear to entitle an applicant to Medicaid benefits, he may be denied them if he transferred assets at less than their fair market value. In other words, the premise for applying section 1396a(j)(1), with its restriction on implementing procedures, is that some other provision in the Medicaid statute would, but for that section, entitle the applicant to benefits. If he is not entitled to benefits under any other provision because he lives in a section 209(b) state in which he would not have been eligible for benefits under the state plan in force on January 1, 1972, section 1396a(j)(1) does not come into play at all, and it therefore does not invalidate Indiana's reach-back provision.

This interpretation of section 1396a(j)(1) is consistent with the purpose of the Boren-Long amendment, which was, in the words of Senator Long, "to grant the States more flexibility." 126 Cong.Rec. S16505 (1980). He also said that "generally, State rules could not be more restrictive than the Federal SSI rule," *id.* at S16506, but in context this is a reference to the fact that the amendment empowers the states to tighten up their existing eligibility standards. Senator Long did not want to give states carte blanche to disqualify, because of transfers of assets below fair market value, people previously eligible for Medicaid benefits; but this does not mean that he wanted to enlarge the Medicaid rolls in 209(b) states.

It seems improbable that a Congress concerned—in a time of growing national concern with waste, fraud, and extravagance in government spending—with the abuse of the Medicaid program by applicants' transferring their assets to relatives or friends without adequate consideration in order to become eligible for Medicaid should have used a bill designed to correct this abuse as the vehicle for covertly expanding Medicaid benefits to some of those very people—and to do so in derogation of the well-established distinction in the Medicaid statute between SSI and 209(b) states. The Boren-Long amendment was added to P.L. 96–611 on the floor of Congress, by voice vote, and we doubt that it would have been adopted in this fashion if it had been intended to restrict what had become the historical prerogatives of the 209(b) states. It is at least relevant to note in this connection that out

of the three predecessor bills to the Boren-Long Amendment that failed of passage only one would have placed limitations on section 209(b) states, and it would have done so explicitly. See H.R. 7765, 96th Cong., 2d Sess. at p. 32 (1980); H.Rep.No. 1167, 96th Cong., 2d Sess. 84 (1980), U.S. Code Cong. & Admin.News 1980, p. 5526. The others, like the Boren-Long Amendment itself, are silent on the question—and their legislative history reveals an unequivocal intention not to restrict those states. See S.Rep.No.503, 96th Cong., 1st Sess. 48 (1979), U.S.Code Cong. & Admin.News 1979, p. 2672 (accompanying H.R.934); S.Rep.No. 1111, 95th Cong., 2d Sess. 25 (1980) (accompanying H.R.5285).

Also in issue on this appeal is the provision in the Indiana regulation that makes an individual who has violated the transfer-of-assets rule ineligible for Medicaid benefits until the uncompensated value of the transfer is eaten up by the cost of any medical services that were provided to him after the transfer of assets. For example, if to establish eligibility you transferred $10,000 worth of assets on December 31, 1981, but were paid only $4,000 for them, and you incurred $6,000 in medical expenses in 1982 and another $6,000 in 1983, you would not be eligible for Medicaid until 1983, since your medical expenses in 1982 would be applied to the uncompensated value of the transfer.

The state does not defend this provision on the basis of Indiana's section 209(b) status. The provision is new, and if it is valid it is so only by virtue of 42 U.S.C. § 1396a(j)(2), also added by the Boren-Long amendment, which provides that "in any case where the uncompensated value of disposed of resources exceeds $12,000, the State plan may provide for a period of ineligibility which exceeds 24 months. If a State plan provides for a period of ineligibility [to?] exceed 24 months, such plan shall provide for the period of ineligibility to bear a reasonable relationship to such uncompensated value." Neither the statute nor the legislative history defines the key word in this provision—"reasonable"—but the choice of the word suggests that Congress meant to give the states a broad latitude to prescribe appropriate periods of ineligibility. We cannot say that the ineligibility period in the Indiana regulation lacks a "reasonable relationship" to the uncompensated value of the underlying transfer. If a particular transfer to which the regulation applies had not been made, the uncompensated value would have been an asset of the transferor which until consumed—presumably by the medical expenses that the transferor hoped, by making the transfer, to avoid having to pay himself—would have prevented him from obtaining Medicaid benefits. The regulation thus puts the transferor in roughly the same position, so far as eligibility for Medicaid is concerned, as if he had not made the transfer.

But the regulation is said to be in conflict with another provision added by the Boren-Long amendment, 42 U.S.C. § 1382b(c)(1), which provides that "in determining the resources of an individual . . . there shall be included . . . any resources . . . owned by such individual . . . within the preceding 24 months if such individual . . . gave away or sold such resource . . . at less than fair market value . . . ." (It is this provision, of course, incorporated by reference in section 1396a(j)(1), on which the plaintiffs rest their argument that Indiana's five-year reach-back provision is unlawful.) These words imply, the plaintiffs contend, that the only permissible consequence of an improper transfer is that its uncompensated value be added to the applicant's assets. Therefore, if his other assets had meantime been depleted, he might be eligible for Medicaid immediately. Suppose in our previous example that during 1982 the applicant's other assets, which were just below the level at which he would be ineligible for Medicaid, declined by $6,000. Then after adding the uncompensated value of the improper transfer—$6,000—to those assets he would still not have too many assets to destroy his eligibility for Medicaid, so he could get benefits in 1982.

But if this is the correct reading of section 1382b(c)(1) it reads section 1392a(j)(2)

right out of the statute, by preventing states from prescribing ineligibility periods of any length. Under the plaintiffs' view, all that a state may do to remove the consequences of an improper transfer of assets is to add the uncompensated value to the applicant's remaining assets to determine his eligibility; if after this is done the applicant still has too few assets to be ineligible, he is entitled to benefits forthwith. The period of ineligibility is zero in his case but in no case is it within the power of the state to prescribe. It is computed automatically by adding the uncompensated value of the transfer to the applicant's other assets; the state has no discretion to "provide for a period of ineligibility which exceeds 24 months."

We think it unlikely that one section of the Boren-Long amendment was intended to repeal another, and do not feel driven by the language of section 1382b(c)(1) to such a weird conclusion. That section requires all states to disregard certain transfers of assets in determining eligibility for a variety of federal welfare programs including Medicaid. Section 1396a(j)(2) allows states to prescribe periods of ineligibility as a specific sanction aimed at people who transfer assets for the purpose of establishing Medicaid eligibility. In effect this section allows a state to add an additional sanction limited to Medicaid applicants. The sections are not inconsistent, and we have no warrant for disregarding the second, as the plaintiffs ask us to do.

The plaintiffs' last contention is that the Indiana regulation fails to provide adequate guidance to· applicants and to county welfare officers regarding their respective burdens of proof under the regulation. This contention misconceives the nature of the regulation. It establishes criteria for eligibility, not rules of procedure to govern adversary proceedings.

We conclude that the Indiana regulation is valid, and therefore that the judgment of the district court must be

AFFIRMED.

DECKER, Senior District Judge, dissenting.

In this action, appellants are primarily challenging two aspects of the Indiana transfer of assets rule, described in the majority's opinion, which appellants claim violate the requirements of the Boren-Long Amendment, Pub.L. 96–611, 94 Stat. 3567 (Dec. 28, 1980). The parts of the Indiana regulation under attack here include (1) the five-year "reach-back" provision, which determines the particular transfers that may be considered for the purposes of applying the transfer of assets rule, and (2) the formula for determining the period of ineligibility after a transfer for inadequate consideration is discovered. The majority concludes that both of those aspects of the Indiana rule comply with the requirements of federal law. Because I am unable to agree with that conclusion, I dissent.

Section 5(b) of the Boren-Long Amendment, adding to 42 U.S.C. § 1396a, allows a state to deny Medicaid payments to an individual who would not otherwise have been eligible for such benefits if he had not "disposed of resources for less than fair market value." If a state chooses to so deny benefits, it may develop a procedure that "is not more restrictive than the procedure specified in section 1613(c) of [the Social Security] Act." Section 1613(c), 42 U.S.C. § 1382b(c), was added by Section 5(a) of the Boren-Long Amendment. It provides that assets owned by an otherwise eligible individual "within the preceding 24 months if such individual . . . gave away or sold such [assets] at less than fair market value" may be considered for the purpose of determining eligibility for benefits.

In its opinion, the majority suggests that the Indiana five-year reach-back regulation "seems inconsistent" when compared with the two-year Boren-Long provision. *Supra* at 1215. I would go beyond "seems inconsistent." If the requirements of the Boren-Long Amendment apply to Indiana's transfer of assets rule, it is clear that Indiana's five-year reach-back conflicts with the federal law and, therefore, is invalid. Two district courts which have considered this

1218

issue in reviewing other states' transfer of assets rules have had no difficulty in reaching that conclusion. *See Dokos v. Miller,* 517 F.Supp. 1039, 1045 n.8 (N.D.Ill.1981); *Beltran v. Myers,* 4 Medicare & Medicaid Guide (CCH) ¶ 31,465 (C.D.Cal. July 30, 1981), *aff'd,* 677 F.2d 1317 (9th Cir. 1982).

Appellees argue that the Boren-Long limitations do not apply to Indiana. Appellees' argument relies on Indiana's special position in the Medicaid program as a "Section 209(b)" state. Section 209(b), 42 U.S.C. § 1396a(f), provides that states which so choose may limit their Medicaid coverage to those individuals who would have been eligible under the state plan that was in effect on January 1, 1972. Section 209(b) was enacted when Congress otherwise widely expanded Medicaid eligibility in 1972. The Medicaid plan in effect in Indiana on January 1, 1972, included a transfer of assets rule which had a five-year reach-back provision. Appellees argue that that provision is protected by Section 209(b) from Congressional change.

The majority accepts appellees' argument. Given that the Boren-Long Amendment was added to Pub.L. 96–611 on the floor of Congress, its legislative history is understandably sparse. Nonetheless, relying on its assumption that Congress did not intend to broaden Medicaid eligibility in states like Indiana, which have restrictive transfer of assets rules, the majority concludes that the Boren-Long Amendment does not apply to Section 209(b) states in general, and to Indiana in particular. I am unable to accept such result oriented reasoning.

It is a truism that in construing a statute, the court should first consider the words of the statute itself. The first phrase of 42 U.S.C. § 1396a(j)(1), as added by Boren-Long, provides that it applies "[n]otwithstanding any other provision of this title." Given that Section 209(b) is in the relevant title, the quoted language, on its face, evidences Congressional intent to apply the Boren-Long Amendment to *all* states—Section 209(b) states included. The majority dismisses the impact of the opening phrase,

by claiming that it merely applies to the first sentence of Section 1396a(j)(1) and "mean[s] that notwithstanding any statutory provision that might appear to entitle an applicant to Medicaid benefits, he may be denied them if he transferred assets at less than their fair market value." *Supra* at 1215. The difficulty with that reasoning is that the opening phrase then becomes wholly redundant; the rest of the sentence clearly provides that people who would be eligible under other Medicaid provisions may lose that eligibility by improperly transferring assets.

Given the clarity of the Boren-Long language, it is not strictly necessary to go on and consider the other sources, scarce as they are in this case, for divining Congressional intent. In order to fully address the majority's arguments, however, I would note that whatever the history of the Boren-Long Amendment, it does not support the majority's position.

The majority's analysis is based on its assumption that applying the Boren-Long Amendment's two-year reach-back provision to Indiana would expand Indiana's Medicaid coverage beyond what it was before Boren-Long was passed. That conclusion fails to take into account the legal situation facing Congress at the time it passed Boren-Long, which furnishes a more plausible explanation for the legislation.

Shortly before the passage of Boren-Long, several state transfer of assets rules had been overturned by the courts as contravening the earlier federal requirement that only *"actually available* resources be considered for eligibility purposes." *Dokos, supra,* 517 F.Supp. at 1044 (emphasis in original). *See Caldwell v. Blum,* 621 F.2d 491 (2d Cir. 1980), *cert. denied,* 452 U.S. 909, 101 S.Ct. 3039, 69 L.Ed.2d 412 (1981); *Fabula v. Buck,* 598 F.2d 869 (4th Cir. 1979); *Udina v. Walsh,* 440 F.Supp. 1151 (E.D.Mo. 1977); *Buckner v. Maher,* 424 F.Supp. 366 (D.Conn.1976), *aff'd,* 434 U.S. 898, 98 S.Ct. 290, 54 L.Ed.2d 184 (1977); *Owens v. Roberts,* 377 F.Supp. 45 (M.D.Fla.1974). *But see Dawson v. Myers,* 622 F.2d 1304 (9th Cir. 1980), *vacated sub nom. Beltran v.*

*Myers,* 451 U.S. 625, 101 S.Ct. 1961, 68 L.Ed.2d 495 (1981). Therefore, when Congress passed a national transfer of assets rule by enacting Boren-Long, it did so at a time when there was a very strong possibility that soon there would be no such rules, on either the state or federal level. It was merely an accident of history that the standards adopted by Congress were less strict than the potentially invalid standards then in effect in Indiana. Applying Boren-Long to Indiana would not require a finding by this court that Congress actually intended to relax the Medicaid eligibility standards in Indiana or elsewhere.

Nor does the language from Senator Long's statement on the floor of Congress support the majority's interpretation. Senator Long said,

"Under this provision, an individual applying for SSI benefits would have to continue to count as his own any belongings which he had given away within the 2 prior years. In the case of medicaid eligibility, the amendment makes explicit the intent of the earlier Senate provision to grant the States more flexibility. The amendment would permit the States to establish disposal of asset disqualification rules for medicaid purposes which differ in detail from the SSI rule."

126 Cong.Rec. S16505–06 (1980). It is clear that the flexibility given to the states involved the authority, given to them *explicitly,* to provide for varying terms of disqualification after an improper transfer was discovered. *See* 42 U.S.C. § 1396a(j)(2). Senator Long reinforces that conclusion by stating further,

"Generally, State rules could not be more restrictive than the Federal SSI rule except that the period of disqualification could be longer than 24 months in cases where a very large disposal of assets—more than $12,000—is involved."

*Id.* at S16506. Nowhere in his comments does Senator Long suggest that the states would have the flexibility to lengthen the federally mandated two-year reach-back provision. Because I believe that the states do not have that flexibility, and because I believe that the clear language of the Boren-Long Amendment indicates that it should apply to all states, I would reverse that portion of the district court decision upholding Indiana's five-year reach-back provision.

The second element of the Indiana rule that is being attacked in this suit as being inconsistent with federal law involves the method by which Indiana has chosen to calculate the period of ineligibility after an improper transfer involving more than $12,000 is discovered. Essentially, the controversy boils down to whether Indiana may exclude consideration of normal living expenses in determining the period of ineligibility. As the rule is now written, Indiana only allows persons to "spend down" their excess assets, as determined by the transfer of assets rule, by spending the money on medical expenses. As the majority notes, the effect of the Indiana rule is to extend the period of ineligibility for people who transfer assets for inadequate consideration beyond the time that the applicant would have been ineligible had he held onto the asset in question and used it to meet normal living expenses. The majority concludes that such a punitive action on the part of Indiana is proper under Boren-Long, which requires that the period of ineligibility "bear a reasonable relationship to [the] uncompensated value" of the disposed assets. 42 U.S.C. § 1396a(j)(2). Again, I cannot agree.

It is true that the key phrase "reasonable relationship" is nowhere defined in Boren-Long. However, the states are not given *carte blanche* to determine what is reasonable. It is my opinion that the options of the states are limited by the language in 42 U.S.C. § 1382b(c)(1) which provides:

"In determining the resources of an individual ... there shall be included ... any resource ... owned by such individual ... within the preceding 24 months if such individual ... gave away or sold such resources ... at less than fair market value ..."

In my view, that language states Congress' unmistakable intent to treat transferred as-

**1220**

sets in the same manner as assets that were retained. I can find no support for the differential treatment given under the Indiana rule.

The majority suggests that that conclusion reads Section 1396a(j)(2) out of Boren-Long. My own analysis differs. If the amount of the uncompensated value of the disposed assets is large, the state may prescribe a period of ineligibility to correspond in a reasonable way to the time that it would otherwise have taken the applicant to spend the resources represented by the asset. If the uncompensated value is so small that the applicant would have been eligible for benefits even if he had retained the asset, I do not believe that he should be denied benefits because of the transfer. Though that case is apparently not before us, I would hold such a state regulation *per se* unreasonable.

Finally, there is no indication in any legislative history that Congress intended to punish asset transferors in the manner that Indiana has done. It is important to note that the transfer of assets rule is not strictly limited to "fraudulent" transfers, but rather, any uncompensated transfer is presumed fraudulent unless the applicant presents convincing evidence to prove otherwise. 42 U.S.C. § 1382b(c)(2). Further, if the transfer was truly fraudulent and made for the purpose of improperly receiving benefits, Congress has already provided sanctions under 42 U.S.C. § 1396h. The states should not be allowed to add to the sanctions mandated by Congress. I would reverse the district court opinion on this point as well.